**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| **IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION** | 2:24-MD-03126-BMM<br><br>**PLAINTIFFS' POSITION ON MODIFIED INITIAL DISCLOSURES** |

At the November 14, 2024 Initial Conference, the Court stated its intention to resolve the litigation within 12-18 months. Plaintiffs share this intention, but meeting that timeline will require a departure from business as usual in data breach litigation and necessitate the use of pragmatic case management tools tailored to advance core issues. Through experience in other data breach MDLs, the undersigned have developed an understanding of the case management tools that facilitate resolution of these cases, and those that do not. Plaintiffs' proposal—modified initial disclosures based upon "fact sheets" adopted by other data breach MDL courts—will help focus and narrow issues relevant to the merits and facilitate quicker resolution.

## I. ENHANCED INITIAL DISCLOSURES WILL FOCUS THE ISSUES, LIMIT DISCOVERY DISPUTES, AND ADVANCE RESOLUTION

The Court should order the modified initial disclosures attached to the Joint Memorandum at Appendix B (Doc. 266 at 27-31).

The Court's authority to do so is clear. In managing the MDL, the Court may "*sua sponte* initiate special procedures" such as "modifying the timing of initial disclosures" and "permitting limited discovery, prior to Rule 26(a)(1) initial disclosure, of information helpful or necessary in forming a discovery plan." *Manual for Complex Litigation, Fourth* (2004) ("*Manual*") § 11.12. The Court may "direct[] disclosure of core information where appropriate to avoid the cost and delay of formal discovery." *Manual* § 11.421. And the Court enjoys broad authority under Rule 16(c)(2)(L) to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 698-99 (9th Cir. 2011) ("To promote efficiency in a context involving the juggling of dozens or thousands of independent cases, a district court needs to have broad discretion to administer the proceeding as a whole."). *See also Best Practices for Large and Mass-Tort MDLs*, MDL Guideline 1 at 2, Bolch Judicial Institute,[1] Duke Law School (2d ed.) ("Bolch MDL Guidelines") (judges possess a number of

---

[1] *Available at* https://scholarship.law.duke.edu/cgi/ viewcontent.cgi?article=1004& context=bolch

case management tools to facilitate the just, speedy, and inexpensive resolution of issues, including adoption of measures to "streamlin[e] key issues," "reduc[e] litigation costs," and "mov[e] cases toward resolution (by trial, motion practice, or settlement).").

In this case, ordering modified initial disclosures will advance what is "[p]robably the judge's most important function in the early stages of litigation management[:] to press the parties to identify, define, and narrow the issues." *Manual* § 11.31.  The modified initial disclosures require the parties to provide, early on, core information that would normally be obtained through formal discovery later in the case. Plaintiffs' proposal moves the exchange of this information to the front of the case: Defendants will have information pertinent to the named Plaintiffs to make their standard challenges to standing and on damages, and Plaintiffs will have standard information related to Defendants' security practices and investigation of the data breach (the heart of the case), as well as relevant custodians and third parties. Though this information may eventually emerge during discovery, there is no serious question that this information is at the center of the claims and standard procedural defenses in this matter. It should be exchanged now. Doing so "avoids the cost of unnecessary formal discovery and accelerates the exchange of basic information to plan and conduct discovery and settlement negotiations." *Manual* § 11.13.

## II. MODIFIED INITIAL DISCLOSURES WILL NOT PREJUDICE DEFENDANTS

Early disclosure of basic information will not prejudice either party. Defendants appear to agree in principle to some early disclosure (Doc. 266 at 19), but insist that early disclosure must occur through the exchange of a small number of interrogatories. While Plaintiffs appreciate Defendants' willingness to provide some information early, the interrogatory process Defendants envision could involve weeks or months of protracted negotiations around standard objections. This does not advance the purposes served by early disclosure.

In contrast, Plaintiff's fact sheet approach poses questions that are intended to be answered with limited or no objections. The questions are straightforward and targeted to the core issues in the case. There are no dragnets. And, where necessary and appropriate, Defendants may still object.[2] But the presumption is straightforward disclosure—not protracted discovery practice or boilerplate objections.

To the extent Defendants object to the form or wording of the proposed questions, they should identify their objections in advance of the hearing before the

---

[2] Federal Rule of Civil Procedure 26(c) provides a procedure for an objection to an initial disclosure if "a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan." At that point the Court can "determine what disclosures, if any, are to be made and must set the time for disclosure." Thus, Defendants will have the ability to object as outlined in Rule 26(c).

4

Court on January 9. That way, the parties can work together to improve the disclosures or, if necessary, obtain the Court's assistance at the hearing to resolve any outstanding issues. Defendants have had since mid-December to consider Plaintiffs' proposed modified initial disclosures. There is no reason to delay progress reaching an acceptable set of initial disclosures that advance key issues in the case.

## III. RECENT MDL DATA BREACH CASES AND A FEDERAL JUDICIAL CENTER PILOT PROGRAM SHOW THAT INNOVATIVE CASE MANAGEMENT TOOLS WORK TO EXPEDITE AND FACILITATE CASE RESOLUTION

Plaintiffs' proposal has been tested and proven successful in MDL litigation. For example, in *In re Blackbaud Inc. Customer Data Security Breach Litigation*, MDL No. 2972 (D.S.C.), Judge J. Michelle Childs ordered that the parties negotiate the form of "fact sheets" which would be exchanged early on in the litigation, adopted the form proposed by plaintiffs, and ordered that the defendant immediately produce the post-breach forensic report. *In re Blackbaud*, ECF Nos. 61, 68. The "fact sheets" became an integral part of the case, sped up the discovery process, and were cited by both parties as the case progressed. Other MDLs have also required this type of early disclosure in the discovery process. *See, e.g., In re Samsung Cust. Data Security Breach Litig.*, MDL No. 3055 (D.N.J.); *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 2022 WL 3211421, at *1 (D.N.J. Aug. 9, 2022) (affirming special master order requiring defendant fact sheets; "the purpose of the fact sheets is to provide counsel for both sides with the basic information necessary

5

to move this consolidated proceeding through the process and toward a resolution"); Pretrial Order No. 31(a), *In re Xarelto (Rivaroxban) Prods. Liab. Litig.*, MDL No. 2592 (E.D. La. Dec. 11, 2018).[3]

Early mandatory disclosures as proposed by Plaintiffs here also have a compelling track record in reducing discovery disputes. For example, 75 federal district court judges participated in a pilot program requiring substantial initial disclosures in employment discrimination cases. *See* Report on Pilot Project Regarding Initial Discovery Protocols for Employment Cases Alleging Adverse Action, Federal Judicial Center (Oct. 2015).[4] A goal of the program was that "the amount and type of information initially exchanged ought to focus the disputed issues, streamline the discovery process, and minimize opportunities for gamesmanship." *Id.* The Federal Judicial Center study showed that the pilot program reduced discovery motion practice by 50 percent. *Id.* The success of the pilot program has led to judges' adoption of enhanced initial disclosures in other practice areas.

---

[3] *See also* Federal Judicial Center, *Plaintiff Fact Sheets in Multidistrict Litigation Proceedings A Guide for Transferee Judges* (2019), FJC-M-2019-3, 2019 WL 1441822 (discussing how the Court may determine what fact sheets may be served when, and the contents of same).

[4] Available at https://www.fjc.gov/sites/default/files/2016/ Discovery%20Protocols%20Employment.pdf .

6

States have also begun adopting similar enhanced initial disclosure regimes in their civil rules of procedure and, in one state, a survey of practitioners showed that most agreed that the initial disclosure change "reveal[ed] the pertinent facts early in the case," "help[ed] narrow the issues early in the case," and facilitated agreement on the scope and timing of discovery. *See* Hon. Andrew D. Hurwitz, *Possible Responses to the ACTL/IAALS Report: The Arizona Experience*, 43 Ariz. St. L.J. 461, 469 (2011) (quoting Inst. for the Advancement of the Am. Legal Sys. at the Univ. of Denver, *Survey of the Arizona Bench & Bar on the Arizona Rules of Civil Procedure* 1 (2010)).

## IV.   CONCLUSION

For the foregoing reasons, the Court should order the modified initial disclosures proposed by Plaintiffs. If appropriate, the Court should consider ordering Defendants to identify the nature of their objections in advance of the hearing on January 9 and instruct the parties to meet and confer regarding those objections, and resolve any outstanding issues promptly at the hearing.

Dated: January 3, 2025

Respectfully submitted,

/s/ Jason S. Rathod
Jason S. Rathod
**Migliaccio & Rathod LLP**
412 H St NE, Suite 302
Washington DC 20002
Tel. 202.470.3520
jrathod@classlawdc.com

7

/s/ John Heenan
John Heenan
**Heenan & Cook**
1631 Zimmerman Trail
Billings, MT 59102
Tel. 406.839.9091
john@lawmontana.com

/s/ Amy Keller
Amy Keller
**DiCello Levitt LLP**
Ten North Dearborn, Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

/s/ J. Devlan Geddes
J. Devlan Geddes
**Goetz, Geddes & Gardner P.C.**
35 N. Grand Ave.
Bozeman, MT 59715
Tel. 406.587.0618
devlan@goetzlawfirm.com

/s/ Raphael Graybill
Raphael Graybill
**Graybill Law Firm, PC**
300 4th Street North
Great Falls, MT 59401
Tel. 406.452.8566
raph@graybilllawfirm.com

*Co-Lead Counsel for Plaintiffs*