IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| **IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION** | 2:24-MD-03126-BMM <br><br> **CO-LEAD COUNSEL'S PROPOSED MODIFICATIONS TO LEADERSHIP STRUCTURE** |

Co-Lead Counsel for Plaintiffs propose the following modifications to the leadership structure adopted by the Court in Doc. 255: (1) inclusion of a spoke for the investigation and prosecution of claims by financial institutions against Defendants Snowflake and Ticketmaster / Live Nation, and (2) removal of the Hot Topic spoke.

The Court has "empowered Leadership Counsel to propose modifications to the leadership structure whenever necessary." (Doc. 308 at 1 (citing Doc. 248 at 4)). *See also* Doc. 255 at 1 ("Plaintiffs' Co-Lead Counsel may propose alterations to the leadership structure as necessary throughout the litigation").

### I.     Proposed Modifications

**A. Creation of a Financial Institutions "Spoke"**

The first proposed modification is to designate a case management team (i.e. "spoke") for the investigation and prosecution of claims by financial institutions

against Defendants Snowflake and Ticketmaster / Live Nation. Co-Lead Counsel propose to designate Plaintiffs Executive Committee members James Pizzirusso and Bill Rossbach for this purpose. Plaintiffs are actively investigating these claims and vetting potential class representatives and will confer and coordinate with individual counsel who have filed financial institution claims as part of that process. Pursuant to the Court's Order during the February 6, 2025, status conference, any currently-filed financial institutions claims are stayed. (Trans. at 38:9-10). *See also* Doc. 285 at 7 (staying all claims not contained in operative, representative complaint). Plaintiffs will meet, confer, and coordinate with Defendants Snowflake and Ticketmaster / Live Nation in advance of any amendment to the operative, representative complaint that includes financial institution claims.

### B. Removal of Hot Topic "Spoke"

The second proposed modification is the removal of the case management team / spoke for Hot Topic, which was voluntarily dismissed from the MDL. (Doc. 269). The leadership structure adopted in Doc. 255 otherwise remains unchanged.

### II.   Argument

### A. These Modifications are Supported and Routine

The proposed modifications to the leadership structure are routine, made pursuant to the Court's prior Orders (Docs. 248; 255; 308), and consistent with common practice in complex litigation to provide unified case management by

overall Co-Lead Counsel while designating separate committees or tracks for different categories of claimants.  *See, e.g.*, Appendix A, *In re: Bio-Lab Class Actions*, No. 1:24-CV-4407-SEG, Dkt. 112 at 3 (N.D. Ga.) (appointing Co-Lead Class Counsel overseeing both consumer and business class committees); Appendix B, *In re: Change Healthcare, Inc. Customer Data Security Breach Litigation*, MDL No. 24-3108 (DWF/DJF), Pretrial Order No. 3 (D. Minn.) (appointing Lead Counsel overseeing business and consumer tracks); Appendix C, *In re: Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (PAM/JJK), Dkt. 74 (D. Minn.) (appointing "Executive Committee" overseeing consumer and financial institution case committees).

The Court has already denied the motions by attorneys outside the appointed leadership structure to sever financial institution claims and establish a wholly separate set of leadership appointments.  (Doc. 308).  And for good reason.  The Bolch Judicial Institute's "Best Practices for Large and Mass-Tort MDLs" provides that,

> [a] strong lead counsel role is also necessary to avoid depriving plaintiffs as a whole of the most knowledgeable, skilled, and experienced counsel and by "balkanizing" the plaintiffs into so many sub-groups that effective organization would be impossible.

*Best Practices for Large and Mass-Tort MDLs* at 53, *Bolch Judicial Institute*, Duke Law School (2d ed.) ("Bolch Best Practices"), *available at* https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004& context=bolch

(courts should "prevent[]complaints about lead counsel from being used to jockey for position or for other improper purposes. Requests to remove leadership counsel should be entertained only for very serious and acute problems."). The proposals at Docs. 302 and 304 (and denied by the Court at Doc. 308) would do exactly that: balkanize the plaintiffs and make the already-complex case management issues in this matter far more difficult to resolve. Plaintiffs have worked cooperatively and effectively with the various Defendants to date, but it has not been without significant effort, compromise, and discipline. Adding another independent group of plaintiffs' counsel to the equation would require revisiting the extensive work already accomplished and threaten consensus on crucial case management issues prospectively. Further, to the extent there are spoke-specific needs to customize case management procedures, the existing leadership structure has accommodated them effectively and can continue to do so. *E.g.*, Doc. 325 (staying proceedings as to AT&T pending mediation). As indicated, the proposed structure will work to incorporate financial institution clients and their counsels' viewpoints and involve them in the case as necessary.

    **B. There is no Conflict**

Finally, there is no inherent "conflict" in having the financial institution spoke under the same overall supervision as consumer spokes. Issues may arise in cases where counsel are pursuing claims on behalf of multiple plaintiffs against the same

4

defendant and there is a "limited fund" available to pay claims. But there is no evidence here that either Snowflake or Ticketmaster / Live Nation have a "limited fund" issue that could give rise to consumers and financial institutions seeking recoveries greater than the total assets and available insurance policies of those corporations.[1] And if there were, Plaintiffs have case management tools under the existing structure to promote Co-Lead Counsel's ongoing obligation to "maximize the common and collective interests of all plaintiffs in negotiating a global settlement consistent with appointment." Bolch Best Practices, *Best Practice 9E* at 59. Specifically, Plaintiffs could seek the involvement of an experienced mediator or Magistrate Judge Johnston to ensure that any advanced-stage settlement negotiations are arms-length and fair. If a limited fund issue did come up, Plaintiffs would also seek the involvement of an independent third party who has not represented consumers to the extent necessary to ensure a fair distribution of proceeds.[2] On these matters, adding a financial institutions spoke is no different than existing

---

[1] Live Nation revenues are expected to be $5.54 billion in Q4 of 2024. https://finance.yahoo.com/news/live-nation-lyv-expected-beat-150057473.html. Snowflake's latest quarterly report shows revenue of $900.3 million. https://investors.snowflake.com/financials/quarterly-results/default.aspx

[2] Notably, the counsel who sought the creation of a separate financial institutions track first sought appointment to leadership positions in the overall MDL where they represented consumers. Only after their motions were denied did they file a new financial institution complaint and raise the issue of potential conflicts. Though they have never fully articulated what they believe this conflict to be, if any existed (which it does not) it would likely also apply to them.

arrangements, where multiple different categories of claimants seek recoveries from a common entity: Snowflake.

This arrangement is common in complex litigation, as described above, because the normal strictures of Rule 1.7 do not apply to the judicially-created relationship between court-appointed leadership and class members. Bolch Best Practices at 51 ("the authority of lead counsel, including liaison counsel and plaintiffs' executive or steering committees' members in an MDL, emanates solely from the court. MDL leadership appointments are distinguished from the typical attorney-client situation, in which the lawyer's authority arises from a formal retainer agreement between the attorney and the plaintiff."). Rather,

> appointment of lead counsel protects the interests of the MDL plaintiffs as a whole. The primary purpose of counsels' role is to further the interests of judicial efficiency and economy for the collective benefit of those involved in the MDL.

*Id.*

The proposed modifications to the leadership structure protect the interests of the MDL plaintiffs as a whole, and further the interests of judicial efficiency and economy for the collective benefit of all those involved in the MDL. The Court should approve them.

RESPECTFULLY submitted this 13th day of February, 2025.

/s/ Raph Graybill
Raphael Graybill
Graybill Law Firm, PC

300 4th Street North
Great Falls, MT 59401
Tel. 406.452.8566
raph@graybilllawfirm.com

/s/ Jason Rathod
Jason S. Rathod
Migliaccio & Rathod LLP
412 H St NE, Suite 302
Washington DC 20002
Tel. 202.470.3520
jrathod@classlawdc.com

/s/ John Heenan
John Heenan
Heenan & Cook
1631 Zimmerman Trail
Billings, MT 59102
Tel. 406.839.9091
john@lawmontana.com

/s/ Amy Keller
Amy Keller
DiCello Levitt LLP
Ten North Dearborn, Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

/s/ J. Devlan Geddes
J. Devlan Geddes
Goetz, Geddes & Gardner P.C.
35 N. Grand Ave.
Bozeman, MT 59715
Tel. 406.587.0618
devlan@goetzlawfirm.com

*Co-Lead Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2025, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

<i><u>/s/ Raph Graybill</u></i><br>
Raph Graybill

*Co-Lead Counsel for Plaintiffs*