## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

|  |  |
|---|---|
| IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION | **Case No. 2:24-MD-03126-BMM**<br><br>**STIPULATED ORDER FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

This Order Regarding the Production of Documents, Electronically Stored Information and Paper Documents ("ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the parties and their counsel of record (collectively, the "Parties") in the above-captioned litigation (the "Matter").

I.      **GENERAL PROVISIONS**

A. **Applicability.** The production specifications in this Order apply to documents that are produced in the first instance in the Matter. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor order. The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order. Productions served in the Matter that were delivered before the date of entry of this

1

Order are exempt from the terms of the Order, unless the Producing
Party and Receiving Party otherwise agree in writing.

**B. ESI Liaison Counsel**

    **1.** Each Party agrees to designate at least one ESI Liaison within 14
days after entry of this ESI Protocol. Any Party is free to change its
designated ESI Liaison by providing written notice to the other
Parties.

    **2.** Each ESI Liaison will be prepared to participate in the resolution of
any e-discovery disputes or ESI issues that may arise (or designate
another person as primarily responsible). All ESI Liaisons shall be
included on all correspondence relating to document productions.

**C. Deadlines.** References to schedules and deadlines in this ESI Protocol
shall comply with F.R.C.P. 6 with respect to computing deadlines.

**D. Definitions:**

    1. "Party" means Plaintiffs and/or Defendant(s) in this Litigation.

    2. "Requesting Party" means the Party requesting production of
documents.

    3. "Producing Party" means the Party that may be producing
documents in response to the request of Requesting Party.

E. **Confidential Information.** Nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under a protective order entered by the Court.

F. **Encryption.** To maximize the security of information in transit, any media on which the documents are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

G. **Rolling Productions.** Documents that have been identified by a party for production shall be produced at reasonable intervals.

II. **SCOPE OF DISCOVERY**

A. **Scope in General.** Pursuant to Federal Rule of Civil Procedure 26(b)(1), the Parties may obtain discovery regarding any non-privileged matter that is relevant to any Party's claim or defense, and proportional to the needs of the case, subject to the provisions of this Section and Federal Rules of Civil Procedure.

B. **Preservation.** Nothing in this Order shall alter the preservation duties imposed by the Federal Rules of Civil Procedure or applicable common law. Should either Party seek specific relief from a preservation obligation, they shall provide the other Party a specific request. The

3

request shall contain a description of the data at issue, the basis of the specific request, a description of other sources containing identical or substantially equivalent data, if such sources exist and to the extent known. The Party receiving the request shall exercise good faith in reviewing the request. If the Parties cannot agree, the issue may be presented to the Court.

C. **Disclosure of Archival/Backup Copies**. If a Party learns that potentially relevant and non-duplicative documents or information have been destroyed per a document retention policy, but that an archival/backup location contains an archival/backup copy of such documents, the Party will disclose the existence of this archival/backup data. The Parties agree to meet and confer about this archival/backup location to determine whether the burden or expense of restoring and collecting this data outweighs its likely benefit. Without derogating from the aforesaid, the Parties agree that the following data categories shall be deemed inaccessible and therefore, not discoverable, and should not be preserved:

1. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

2. Custodians' online access data such as temporary internet files, history, cache, cookies, and similar data generated during routine internet usage and temporary and/or transitory system or productivity files.

3. Data in metadata fields that are frequently updated automatically, such as last opened date.

4. Backup and archive data that are substantially duplicative of data that are more accessible elsewhere.

5. Data remaining from systems no longer in use that is unintelligible on the systems in use or other reasonably available method and where there is no reasonable way to convert the data to a universal format such as CSV, XLSX, TXT, SQL, XML, etc.

6. Data from personal information management applications (such as Microsoft Outlook) (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, or Android, and devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**D. Prior Productions in Other Matters.** To the extent any Party is required or agrees to produce a copy of an entire production made in

5

other cases or government investigation, such documents may be produced in the format in which they were previously produced. To the extent a Requesting Party believes such production is not in a reasonable usable form, the parties will meet and confer. The producing party will make reasonable efforts to apply the original Bates numbers assigned to them in those other proceedings and the Bates- stamp required in this Matter.

E. **Third Party Subpoenas and the processing of non-party documents.** A Requesting Party issuing a non-party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that the non-party produce documents in accordance with the specifications of this Order relating to form of production. The Issuing Party is responsible for producing to all other Parties any productions obtained in the same form in which the document(s) was/were produced by the non-party. Such non-party productions should be served by the Issuing Party to all other Parties within seven (7) days of the non-party's production to the Issuing Party, except that should any issues arise making such a reproduction impracticable within that timeframe, the Issuing Party receiving the non-party production will notify all other Parties of the issue and the Parties will

thereafter meet and confer in good faith to resolve the issue within a reasonable time. If any such non-party productions are not Bates numbered by the non-party producer, prior to any Party reproducing the non-party documents, the Parties will meet and confer to determine whether designating the documents with a unique Bates number prefix would be reasonable. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

## III.    GENERAL PRODUCTION FORMAT PROTOCOLS

**A. Appendices.** Appendix A and B contain the technical specifications for the production of documents. If there is any conflict between the body of this document and the Appendices, the text of the body of this document shall control.

**B. FORM OF PRODUCTION: FILE TYPES AND FORMAT**

1. Emails shall be produced as TIFFs, as defined in Appendix A.

2. All spreadsheet (e.g., Microsoft Excel, Corel Quattro, etc.) files shall be produced as native files with TIFF placeholder images, unless they require redaction and cannot be produced as redacted natives.

3. All PDF files shall be produced as TIFF files, except for files that contain comments and/or annotations and no redaction is applied, in which case the document shall be produced in native with a TIFF placeholder.

4. All word processing (e.g., Microsoft Word) files shall be produced as TIFF files, except for files that contain comments, notes, revisions, track changes and/or other hidden text and no redaction is applied, in which case the documents shall be produced as a native files with TIFF images. In the case of redacted documents, to the extent that a document was last saved with comments or changes tracked, reasonable efforts should be made to image the document showing tracked changes and comments.

5. All presentation files (e.g., PowerPoint) shall be produced as TIFF files with speaker note view visible and in native, unless a redaction is required, in which case the document shall be produced as TIFF only.

6. All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images.

7. The parties will meet and confer as needed regarding the production of other file types, including, but not limited to, CAD drawings, GIS data, materials and prototypes testing, data from non-email messaging applications (e.g., Teams, Slack, Google Chat, et al.), CRM or ERP platforms (SAP, Salesforce, et al.) etc., including with respect to non-standard metadata fields not already listed in Appendix B below.

8. The Receiving Party may request that certain documents originally produced in TIFF format be produced in their native format if the image format is not reasonably usable, by supplying a list of the Bates numbers of the documents they wish to have produced in native format. The Producing Party shall not unreasonably deny such requests.

**C. Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set forth below. All text files shall be provided as a single document-level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

1. **Extracted Text:** All ESI should be provided with complete document-level extracted text files. Extracted text shall include

all comments, revisions, tracked changes, speaker's notes, and text from documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments, if reasonably available.

2. **OCR:** In the event a document, other than spreadsheets that can be produced as redacted natives (e.g., Excel files), contains text that is to be redacted, the Parties will make reasonable efforts to provide Optical Character Recognition ("OCR") text files for any unredacted portions of the documents. The Parties will make reasonable efforts to provide document-level OCR text files for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be

used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). To the extent feasible, documents containing foreign language text must be OCR'd using the appropriate settings for that language (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). The Parties will make reasonable efforts to turn on settings such as "auto-deskewing" and "auto-rotation" during the OCR process to maximize text recognition on any given page.

D. **Redactions.** Redactions for relevance may not be made within a produced document or ESI item as a matter of course. The Parties agree to meet and confer over permissibility of redaction of non-relevant commercially sensitive information within otherwise responsive documents, prior to documents with any such redactions being produced. No redactions for relevance will be made without prior agreement from the receiving party or order of the Court. In circumstances where the producing party has sought agreement from the receiving party regarding redactions that the producing party believes it should be permitted to make, and the receiving

party has not agreed to such redactions, but there is a deadline requiring the production of the documents notwithstanding the parties' active dispute relating to redactions, the producing party may produce the documents with such redactions. However, such a production with redactions shall be without prejudice to the receiving party's right to contest the permissibility of the redactions. If a document contains private or personally identifying information of any non-Plaintiff individual, or privileged information or information otherwise protected against disclosure, the producing Party may produce that document in redacted form. To the extent any corporate governance materials (e.g. minutes of meetings of a Board of Directors or its committees, or documents provided to, presented to, or discussed by the Board of Directors or its committees) are produced, any non-relevant, sensitive Confidential Information contained therein (as defined in the Stipulated Protective Order) may be redacted by the producing Party, subject to reasonable requests for additional information needed to assess the validity of any such redactions. The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated. All metadata fields shall be

12

provided, unless redaction of those fields is necessary to protect the asserted privilege. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format so long as the original document is also preserved in an unredacted form.

E. **Bates Numbering.** All images must be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant prefix across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) use a unique text prefix. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. If a document is reproduced for any reason, it shall be reproduced under the same bates number as the original production. If additional pages are needed beyond those allocated to it during the initial production,

they shall be assigned additional number following a period (e.g. "ABC-000001.001")

**F. Color.** Documents containing color need not be produced in color. Upon reasonable request, the Producing Party will promptly produce a color image of a document if the original document contains color and the color conveys meaningful information.

**G. Hard Copy Documents.** Collected and/or potentially responsive documents that exist in hardcopy and are not duplicative of ESI will be scanned to TIFF image format and produced in accordance with the specifications set forth in this Order. The Parties will use reasonable efforts to make hard copy documents that are not text-searchable searchable by OCR prior to production at that Party's cost. In scanning hard copy documents, the Parties will make reasonable efforts to not merge distinct documents into a single record, and to not split single documents into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be

14

reflected in the proper coding of the beginning and ending document and attachment fields (i.e., the "BegBates," "EndBates", "BegAttach", and "EndAttach" fields). The Parties will make their best efforts to unitize the documents correctly, but need not re-unitize documents that were scanned in the ordinary course of business prior to litigation. Within 14 calendar days (or as otherwise agreed) after notice from a requesting party that a document appears to have been unitized incorrectly, the producing party shall either explain why the unitization is correct or produce a correctly unitized replacement.  If any original hard copy document has any note or attachment affixed to it, the producing party shall scan and produce copies of the original hard-copy document along with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard copy document, the producing party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.

**H. Family Relationships.** Family relationships (e.g., the association between an attachment and its parent document, or between embedded documents) shall be preserved.  A document and all other

documents in its attachment range, emails with attachments, and files with extracted embedded OLE documents all constitute family groups. Attachments should be consecutively produced with their parent such that the bates numbers for the attachment(s) is/are directly subsequent to the parent document.

**I.** **Complete Family Groups/Relationships.** If any member of a family group is produced, all members of that group must also be produced or else logged as privileged/work-product without breaking the grouping of these documents.[1] The Parties agree to meet and confer over the permissibility of withholding non-relevant members of a family group where such non-relevant members contain commercially sensitive information, and redacting these materials would be inefficient and burdensome. To the extent any corporate governance materials (e.g. minutes of meetings of a Board of Directors or its committees, or documents provided to, presented to, or discussed by the Board of Directors or its committees) are produced, family members that solely contain non-relevant,

---

[1] The Parties reserve the right to meet and confer regarding the necessity of production for non-responsive documents requiring privilege logging and/or redaction.

16

sensitive Confidential Information (as defined in the Stipulated Protective Order) may be withheld by the producing Party.

**J.**  **Hyperlinks.**  Documents that are associated by hyperlink or otherwise linked from another location or file without being embedded are not required to be treated as attached files and are not required to be produced as if attachments in order behind the document in which they were referenced by link.  If a Producing Party currently has the technical ability within its own suite of tools to automatically collect hyperlinked documents and/or associate them with the linking document, that party will do so at the time of collection.  This does not require parties to upgrade licenses of existing tools or to acquire tools from outside providers.  Where (1) a Producing Party does not at the time of collection have the technical ability to automatically collect hyperlinked documents, or (2) the family relationship cannot be preserved or readily determined automatically by those tools, that party will inform the Receiving Party of this in writing at the time of production of the documents at issue (but need not identify specific Bates Numbers of the documents at issue).  In that event, the Producing Party will identify, to the best of its ability, the platforms used by the party to

share documents by hyperlink or similar methods during its ordinary course of business, to the extent that documents collected from such platforms were produced without (1) automatic collection of hyperlinked documents, or (2) preservation of family relationships among hyperlinked documents. Thereafter, the Receiving Party may request the identification of a reasonable volume of documents, specifically identified by Bates number, containing internal hyperlinks where the corresponding hyperlinked documents cannot be located in the production by the Receiving Party. Subject to any agreement reached in meet-and-confer discussions, the Producing Party will engage in reasonable efforts to locate the linked documents, as they currently are stored, and either identify them by production number or provide them if responsive, not already produced, and not privileged. The parties acknowledge that in so doing, any document at such a link may differ from the version of the document at the time the hyperlink was sent. For the avoidance of any doubt, the foregoing refers only to linked documents that reside on the Producing Party's internal systems (including any cloud-based systems in use by the producing party); under no circumstances shall a Producing Party be obligated to locate links to

external sources. Notwithstanding the foregoing, nothing herein shall relieve a party from its obligation pursuant to Rule 26 and 34 to search for relevant, responsive information.

## IV.    ESI METADATA FORMAT AND PROCESSING

A. **System Files.** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the Parties.

B. **Email Threading.** The Parties shall produce email attachments sequentially after the parent e-mail. Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the produced emails include all responsive information from a thread, including attachments (regardless of their placement in the email thread) and bibliographic information. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when

producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread.

C. **De-duplication.** A Party is only required to produce a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages or SHA-256 hash values. The Parties shall make reasonable efforts to not produce Duplicate ESI. To the extent identical copies of documents appear in the files of multiple Custodians, the Producing Party shall attempt to produce only one such identical copy across all Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails. Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When Duplicate ESI exists in the files of multiple custodians, the names of all custodians who were in possession of a document prior to de-duplication will be populated in the All Custodians field identified in Appendix B.

D. **Zero-byte Files.** The Parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.

E. **Hidden Text.** ESI items processed after the execution date of this ESI Protocol shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

F. **Compressed Files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

G. **Messages or Chats.** The Parties will meet and confer to discuss the methods to collect message or chat ESI, and the Parties agree to meet and confer regarding the processing and production format for relevant communications in collaboration software prior to any production of chat messages, including the extent to which prior in time and subsequent in time messages need to be produced with responsive messages.

H. **Request Identification.** Production of hard copy documents and ESI in the reasonably usable form set out in this ESI Order need not include any reference to the requests to which a document or ESI may be responsive.

**V.    SEARCH METHODOLOGY**    The Parties shall meet and confer regarding search methods, if any, used to identify responsive documents and ESI.  The fact that a document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent any Party from conducting a manual review of documents identified from such methodology or withholding such file from production on the grounds that the file is not responsive or protected from disclosure by applicable privilege or work-product protection.

The use of a search methodology does not relieve a party from its obligations under the Rules to produce responsive documents, and accordingly documents or ESI known to be responsive to a discovery request or otherwise subject to production shall be produced without regard to whether it was returned by any search methodology used in accordance with this Order or otherwise agreed upon by the parties unless there is a claim of privilege.  A Party using a search methodology will disclose to the Requesting Party the search terms, keywords, date limitations, and custodians it proposes to use to identify responsive documents and ESI. Within fourteen (14) calendar days of such disclosure, the Parties must meet and confer regarding such terms, custodians, and date culling per paragraph V.A ("Search Terms") below.

Should a Party choose to use a search methodology, the Party will specify what custodial and non-custodial sources that the search methodology will be run against. Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, must be reviewed without search methodologies that rely primarily on text.

At meet and conferrals where the topic is the validity of search methodologies to identify documents subject to production, the Producing Party shall provide search terms hits reports pursuant to paragraph V.B ("Hit Reports") below.

A Producing Party wishing to use any method or methodology not specifically addressed by this Order to exclude documents from any review or production, will provide notice to the Receiving Party. All meet and confer sessions regarding search methodologies will give appropriate consideration to minimizing expense and the producing Party's ability to best evaluate and determine appropriate procedures, methodologies, and technologies for preserving, collecting, and producing ESI and other documents. A Producing Party is at liberty to use any methodology and tool for the purpose of prioritizing, categorizing, and/or expediting the review.

## A. SEARCH TERMS

Where the Parties agree that potentially responsive ESI shall be searched using search terms, the Producing Party shall provide to the Requesting Party its proposed search terms.

After disclosure of the Producing Party's proposed search terms, the Requesting Party may make requests for different or additional search terms. If the Parties reach impasse after having met and conferred, either Party may thereafter submit the dispute to the Court or its designee for resolution. Should a party wish to use TAR to exclude documents from its review, the party intending to use TAR will disclose its intended methodology and the parties will meet and confer to resolve any disputes relating to the use of TAR.

### B. HIT REPORTS

The initial hit report shall contain the following with respect to each search term in the proposal:

    a. The number of documents with hits for that term;

    b. The number of unique documents for each term, i.e., documents which do not have hits for any other term; and

    c. The number of document hits plus family members requiring review in connection with all documents with hits.

The Parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application.

### VI.  PROPRIETARY SOFTWARE, SYSTEMS AND DATA STORAGE LOCATIONS

### A. SOFTWARE

To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software (whether created by the Party or not), the Parties shall

meet and confer to minimize any expense or burden associated with the production of such documents in a reasonably usable format.

### B. HARDCOPY DOCUMENT STORAGE

To the extent that relevant documents and evidence are stored in hard copies in a storage facility, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents stored in those locations.

### C. ESI LOCATED ON MOBILE DEVICES

Parties agree to meet and confer to discuss collection of relevant data on mobile devices that are in a Party's possession, custody, and control and that are subject to the considerations in FRCP 26(b).

### VII. PRIVILEGE LOGS

A.      Any document falling within the scope of any request for production that is withheld or redacted on the basis of a claim of attorney-client privilege, work-product doctrine, or any other claim of privilege from discovery is to be identified by the Producing Party in a privilege log. If documents are produced on a rolling basis, privilege logs will also be produced on a rolling basis, with each log being produced 45 days after each production to which it relates. A final log will be produced at least 45 days prior to the close of discovery. Each entry on the privilege log shall include sufficient information for a party or the Court to evaluate the privilege claim.

B.     Privilege logs will be produced in an Excel format, or other agreed-upon format, which allows the Receiving Party to search and sort any and all columns and entries of the privilege log.

C.     A privilege log of the documents withheld or redacted on the basis of privilege will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original ESI (in the case of emails, the metadata fields of the top-level emails will be used):

- Author
- Subject
- Title
- Attachment Name
- File Name
- File Path
- Custodian(s)
- Sender/From
- Recipient/To
- CC
- BCC
- Sent Date/Time
- Created Date/Time
- Date/Time Last Modified
- Family relationship (e.g., identifying parent emails and attachments)
- File Extension
- Attachment Count
- Hash Value
- Conversation ID or Thread ID

D.     Email attachments withheld on privilege grounds shall be logged as separate documents on the log, with family relationships identified. Non-responsive family members need not include a Privilege Description on the log.

26

E.    Parties may substitute an alternative description of the content within the identified metadata field(s) where the content of the metadata field reveals privileged information.  The Producing Party shall identify each instance in which it has modified the content of the field and the basis for the modification.

F.    Parties will also include on the privilege log fields containing: (a) a unique document ID or Bates number; (b) the log production date[2]; (c) information sufficient to understand the family relationship of withheld or redacted documents; (d) the privilege asserted (*e.g.*, attorney-client, work product); and (e) upon reasonable request of a receiving party when the basis for the privilege claim is not clear from the other fields provided on the privilege log (e.g. an email exclusively to or from outside counsel clearly would be privileged), a description of the nature of the withheld or redacted document or communication (a "Privilege Description") in a manner that, without revealing information claimed privileged, will enable a party to assess the privilege claim.

G.    To the extent that a listserv or group email address is identified on the privilege log, the party producing the log shall work in good faith to provide a list of the individuals and/or groups of individuals who make up such a listserv or group email, upon reasonable request.

---

[2] If the document is withheld in its entirety, the production date it would have been included in must be listed.

H.     The privilege log will identify any attorneys on the privilege log using an asterisk, a legend, or other agreed upon method.  Metadata fields relating to senders and recipients of emails will include the full email address of the senders and recipients so that third parties can be identified based on email domain.

I.     To the extent a Producing Party withholds email communications or messages that are included within one individual email thread, and each email communication or message within the individual thread is subject to the same claim of privilege, the Producing Party may include only a single privilege log entry for multiple email messages that are all contained in the same email thread.  The email message that will be logged will be the most inclusive thread that includes all the constituent messages.  An email with a unique attachment not appearing on the most inclusive thread must be logged separately with its attachment.

J.     To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, any description shall include sufficient information regarding, to the extent feasible, which attorney(s) requested or were involved in the preparation of the document that is claimed to be privileged.

K.     Should a Receiving Party have a good-faith reason to believe a particular entry or portion of the entry log is not accurate or does not provide adequate information, the Receiving Party may request additional information, which will be provided to the Receiving Party upon reasonable request.

28

L.    To the extent a Producing Party seeks to withhold any hard-copy documents or documents lacking sufficient metadata, the Producing Party shall log - if known - the following information for such documents consistent with the Rules:

- a statement of the ground(s) alleged for withholding all or part of such document;
- the date the document was prepared;
- the date the document was distributed;
- the identity of the document's author;
- an indication of all authors or recipients of the document who are attorneys;
- an indication of all authors or recipients of the document who are third parties;
- the identity of all recipients of the document;
- a description of the nature of the withheld or redacted document in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the privilege claim; and
- a unique document ID or Bates number.

M.    Notwithstanding a claim of privilege, any document containing both privileged and non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself.

N.    The parties agree that the following documents presumptively need not be included on a privilege log: (1) Communications made after the filing of the first complaint consolidated in this action; (2) work product prepared after the filing of the first complaint consolidated in this action; (3) communications made after the

Incident[3] but before the filing of the first complaint consolidated in this action that are solely between a party and its outside counsel; (4) work product authored by outside counsel after the Incident but before the filing of the first complaint consolidated in this action; and (5) redacted documents where the objective metadata (unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is readily apparent from the context surrounding the redactions. For redacted documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the document may be requested.

O.     Absent agreement in writing by the Parties or Court Order, documents withheld on the basis of privilege may not be logged categorically.  In other words, to the extent a Privilege Description of the withheld document required in subsection (f) of this section is required, it shall be created from an assessment of the individual document and each withheld document shall appear separately with the metadata provided for by this Protocol.  If a Producing Party asserts that a privilege log in the form required by this order is not practicable and that a categorical privilege log should be utilized instead, the Parties agree to meet and confer within five (5) days

---

[3] "Incident" means the threat actor campaign in or around April-June 2024 in which threat actors gained unauthorized access to various, different Snowflake accounts associated with certain Snowflake customers.

of the Producing Party notifying the Receiving Party of the issue. If the Parties are unable to reach agreement, the Producing Party may raise the issue with the Court for resolution. If the Producing Party raises the issue with the Receiving Party at least thirty (30) days in advance of the deadline for the production of the associated privilege log, and the Producing Party raises the issue with the Court at least twenty (20) days in advance of that deadline, then the Producing Party shall not be obligated to provide a privilege log for the responsive privileged materials at issue until the Court resolves the dispute.

P.    When the deposition of a custodian is scheduled for a date following substantial completion of a production of their custodial file, the parties shall provide privilege logs involving documents from the deponent's custodial file no fewer than fourteen (14) days prior to the deposition, unless otherwise negotiated and agreed to between counsel.

## VIII.  CHALLENGING PRIVILEGE

A.    A Receiving Party may challenge a Producing Party's claims of privilege or work-product protection at any time prior to the close of the discovery period or 60 days after the Producing Party's transmission of its last privilege log, whichever is later.

B.    The Receiving Party shall set forth in writing their challenges and the Producing Party shall respond in writing to such challenges within 14 days, unless

31

the Producing Party in good faith determines that additional time is needed due to the volume of challenged documents, in which case the parties will meet and confer to set a timeline for the response to the challenge..

C.    The parties shall endeavor to meet and confer to attempt to resolve the challenge within 7 days after the producing party's response.

D.    If the Receiving Party lodges a challenge to a withheld or redacted document, the Parties agree to meet and confer regarding the claim of privilege pursuant to the guidelines herein. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court.

## IX.    FEDERAL RULE OF EVIDENCE 502(d)

A.    The production of privileged or work-product protected documents, electronically stored information, or other information (collectively, "Privileged Material"), whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d), except as specifically limited herein relating to documents considered Used Documents.

B.    Any party who has received such material, upon learning that such material is subject to a claim of privilege or work-product protection, whether through its own review of such material or upon request of the producing or another

party, shall destroy or return the identified material to Producing Party, in accordance with the procedures set forth in Appendix C, no later than fourteen days from either learning of the production or receiving a written request by the Producing Party or other party for the return of the produced material, except that documents may be sequestered during the pendency of a challenge to a clawback or during the period when a Receiving Party identifies potentially privileged or protected material to a Producing Party and the Producing Party hasn't issued a Clawback Notice (defined below).

C.     If the Receiving Party disclosed material before learning that such material is subject to a claim of privilege or work-product protection, whether through its own review of such material or upon request of the Producing Party or another party, the Receiving Party must promptly take reasonable steps to retrieve the information for its return or destruction.

D.     If a Receiving Party independently learns that a Producing Party produced information that reasonably appears to be subject to a claim of privilege or of work-product protection, the Receiving Party shall notify the Producing Party of the disclosure no later than five days from learning of the production.

E.     The Receiving Party shall not retain or keep any copy, electronic copy, hard copy, or otherwise, of the material or notes regarding the material or its contents.

33

F.      Notwithstanding the foregoing, the Parties agree that any documents used by any Party in a deposition, expert report, or court hearing or filing in this action (with the exception of a motion related to a disputed privilege claim or a disputed confidentiality designation) ("Used Document"), which a Producing Party does not provide written notice of a clawback within thirty (30) days of its initial use or the date that an associated deposition errata sheet is due (whichever is later), shall be ineligible for clawback under 502(d). Used Documents deemed ineligible for clawback under 502(d) shall not result in a subject matter waiver in this proceeding, or in any other state or federal proceeding. The Parties reserve all rights under FRE 502(b) regarding Used Documents.

G.      The Parties further agree that if only a portion of a Used Document is subject to a clawback request, and the portion of the Used Document requiring redaction was not referenced by any Party in a deposition, expert report, or court hearing or filing in this action, then the Used Document will only be deemed ineligible for clawback under 502(d) if the Producing Party does not provide written notice of a clawback within forty-five (45) days of its initial use or the date that an associated deposition errata sheet is due (whichever is later).  The Parties again reserve all rights under FRE 502(b) regarding Used Documents.

H.      The parties may stipulate in writing without the need for Court approval to narrow or extend the time periods specified in this Stipulation and Order.

34

I.       Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or other information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

J.       With the exception of Section IX.F-G above, the provisions of Federal Rule of Evidence 502(b) do not apply.

## X.    CLAWBACK OF INADVERTENTLY DISCLOSED PRIVILEGED MATERIAL

A.       A Producing Party that determines that it made an inadvertent disclosure of Privileged Material in this litigation shall provide written notice (a "Clawback Notice") of the claim to the Party that received the documents identifying the Privileged Material.  The Clawback Notice shall include (i) the Bates range of each privileged document the Producing Party seeks to clawback, and (ii) a privilege log (in the format agreed by the parties) for the documents sought to be clawed back. If the Producing Party claims that only a portion of the privileged document contains privileged or other protected material, the new copy will be redacted to protect only the portion(s) claimed to be privileged or work product.  If the Producing Party claims that the entire document is privileged or protected, then the Producing Party shall provide a slip sheet noting that the document has now been withheld.  The

privilege log accompanying the Clawback Notice shall include a Privilege Description for all clawed back documents.

B.    Procedures Following Clawback Notice

1.    No Challenge.  Within fourteen calendar days of (1) receipt of a Clawback Notice (unless the Receiving Party challenges the Producing Party's claim of privilege as set forth below); or (2) a Receiving Party's own determination that Privileged Document(s) were produced (where the Receiving Party has provided notice pursuant to Section IX.D and no challenge to any Clawback Notice will be made); or (3) a determination by the Court that documents produced are Privileged Document(s); the Receiving Party must promptly return and/or destroy the Document(s), all copies thereof, and any notes that reproduce, copy, or otherwise disclose the substance of the information for which privilege is claimed, and notify the Producing Party when this is complete.

2.    Challenge.  If a Receiving Party challenges a claim that a Document specified in a Clawback Notice is privileged or work-product-protected:

(i)    Upon its receipt of a Clawback Notice, the Receiving Party shall notify the Producing Party of its challenge (and the reasons therefor) within fourteen calendar days of receiving the Clawback Notice asserting the claim.  The Receiving Party shall immediately sequester the challenged Document, all copies thereof, and

36

any notes that reproduce, copy, or otherwise disclose or use the substance of the information for which privilege is claimed, until the claim has been resolved.

(ii)    Within fourteen calendar days of the Producing Party's receiving notification of the challenge, the parties shall meet and confer in an effort to resolve their disagreement.  If the parties are unable to reach agreement, within five business days of the meet and confer, the parties shall submit a joint discovery letter to the Court, submitting the issue for a determination and/or for in camera review.  Each party may use the content of the Document(s) at issue solely in briefing or argument submitted in connection with any challenge to a Clawback Notice, in which case the Receiving Party agrees not to argue that such use constitutes waiver of the claimed privilege or work product protection. If the challenged documents are attached to any briefing to address any challenge to a Clawback Notice or the substantive content of those documents are described in the briefs, the submitting party must seek to have the challenged documents and any descriptions of the substantive content of the challenged documents filed under seal. The Document(s) listed in the Clawback Notice shall not otherwise be used or disclosed by the Receiving Party during the time in which the parties are meeting and conferring about the privileged nature of the Document(s) or during the time in which the challenge is before the Court for determination, unless otherwise agreed in writing by the parties or ordered

by the Court. The Producing Party shall bear the burden of establishing the privileged or protected nature of the Document(s).

      C.     Procedure During Depositions and Hearings

      1.     If, during a deposition, a Producing Party claims that a document being used in the deposition (e.g., marked as an exhibit, shown to the witness, or made the subject of examination) contains material that is privileged or protected work product, the Producing Party may (a) allow the document to be used during the deposition without waiver of any claim of privilege or other protection in this or any other Federal or State proceeding; (b) instruct the witness not to answer questions concerning the parts of the document containing privileged or protected material; or (c) object to the use of the document at the deposition to the extent the entire document is privileged or work-product-protected, in which case no testimony may be taken relating to the document during the deposition until the matter is resolved by agreement or by the Court. If the Producing Party allows the examination concerning the document to proceed consistent with this paragraph, all parties shall sequester all copies of the document(s) in dispute. Pending determination of the Clawback dispute, all parties with access to the deposition transcript shall treat the relevant testimony in accordance with Section IX.F. In the event the Court decides the Clawback dispute in the Receiving Party's favor and the Receiving Party was denied the opportunity to examine a witness as to the materials at issue, the witness

shall be made available at a mutually agreed date and time for examination regarding those materials.

D.    Other Issues Related To Clawbacks.

1,    The Producing Party shall be responsible for removing any Privileged Material from the public record following a clawback and, at the Receiving Party's option, for filing any necessary amended public and/or redacted filings that contain the Privileged Material.

DATED THIS 24th day of March, 2025.

_____
Brian Morris, Chief District Judge
United States District Court