# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

IN RE: SNOWFLAKE, INC., DATA
SECURITY BREACH LITIGATION

CASE No.: 2:24-MD-3126-BMM

This Document Relates only to
Defendant: THE NEIMAN MARCUS
GROUP, LLC

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION........................................................................................1

II.   PROCEDURAL HISTORY .......................................................................2

III.  MATERIAL TERMS OF THE SETTLEMENT ......................................4

    A.    Settlement Class ...............................................................................4

    B.    Settlement Fund.................................................................................5

    C.    Settlement Class Member Benefits ...................................................5

    D.    Notice to the Settlement Class..........................................................7

    E.    Claim Submission Process ................................................................8

    F.    Disposition of Residual Funds ..........................................................9

    G.    Settlement Administrator.................................................................10

    H.    Opt-Out and Objection Procedures .................................................10

    I.    Release of Claims ............................................................................11

    J.    Service Awards ................................................................................11

    K.    Attorneys' Fees and Costs ..............................................................11

IV.   ARGUMENT ...........................................................................................12

    A.    The Settlement Class Should Be Certified ......................................13

        1.  Ascertainability ....................................................................13

        2.  Rule 23(a).............................................................................14

        3.  Rule 23(b).............................................................................18

    B.    The Settlement Should Be Preliminarily Approved.................................20

        1.  Adequacy of Representation (Rule 23(e)(2)(A) and
            Churchill Factor....................................................................22

        2.  The Settlement Was Negotiated at Arm's Length
            (Rule 23(e)(2)(B) and *Churchill* Factor 6)..........................23

3.  The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Churchill* Factors 1–4) .........................................................24

4.  The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D)) ...............................................................28

C.  The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator .......................................28

D.  The Notice Program Will Provide the Best Notice Practicable and the Claim Process is Reasonable ...........................................29

E.  Proposed Schedule of Post-Settlement Events ......................................32

V.  CONCLUSION..............................................................................32

## <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                                     <u>Page(s)</u>

*Adoma v. Univ. of Phoenix, Inc.*,
  913 F.Supp.2d 964 (E.D. Cal. 2012)................................................................. 25

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................... 12, 18, 19

*Anderson v. Boyne USA, Inc.*,
  2023 WL 4235827 (D. Mont. June 28, 2023)...................................................... 18

*Briseno v. ConAgra Foods, Inc.*,
  944 F.3d (9th Cir. 2017)...................................................................... 13

*Burton v. Trinity Universal Ins. Co.*,
  No. CV 14-242-M-DWM, 2015 WL 11090362 (D. Mont. Nov. 17, 2015).. 12, 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004).............................................................*Passim*

*Desue, et al. v. 20/20 Eye Care Network Inc., et al.*,
  No. 0:21-cv-61275-RAR, 2023 WL 4420348, (S.D. Fla. July 8, 2023)............. 27

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ........................................................................ 30

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)................................................................ 16

*Gordon v. New W. Health Servs.*,
  2017 WL 365484 (D. Mont. Jan. 25, 2017)...................................... 13, 14, 15, 16

*Hageman v. AT&T Mobility LLC*,
  No. CV 13-50-BLG-RWZ, 2015 WL 9855925 (D. Mont. Feb. 11, 2015).......... 24

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).............................................................*Passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964)..................................................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)............................................................... 22, 24

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021).................................................................. 26

*In re Hyundai & Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019).................................................................... 17

*In re Mednax Servs., Customer Data Sec. Breach Litig.*,
    No. 21-MD-02994-RAR, 2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ........... 25

*In re PostMeds, Inc. Data Breach Litig.*,
    No. 23-cv-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024).............. 15

*In re Wells Fargo Home Mortg.*,
    571 F.3d 953 (9th Cir. 2009).................................................................... 19

*In re Yahoo! Inc. Customer Data Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 20, 2020)........... 27

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998).................................................................. 21

*McKinney-Drobnis v. Oreshack*,
    16 F.4th 594 (9th Cir. 2024) ................................................................... 21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)................................................................................ 30

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) *cert. denied sub nom.*
    *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983) ................................ 21, 23, 25

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).................................................................... 23

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).................................................................... 17

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)...................................................................... 26

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..................................................................................... 15

*Wolin v. Jaguar Land Rover N. Am. LLC*,
  617 F.3d 1168 (9th Cir. 2010)...................................................................... 20

*Wren v. RGIS Inventory Specialists*,
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................... 23

## Rules

Fed. R. Civ. P. 23 ................................................................. 1, 13, 21

Fed. R. Civ. P. 23(a) ............................................................. 13, 14

Fed. R. Civ. P. 23(a)(1) ................................................................ 14

Fed. R. Civ. P. 23(a)(2) ................................................................ 14

Fed. R. Civ. P. 23(a)(3) ................................................................ 16

Fed. R. Civ. P. 23(a)(4) ................................................................ 17

Fed. R. Civ. P. 23(b)(3) ....................................................... 13, 18, 20

Fed. R. Civ. P. 23(c)(2)(B) ........................................................... 30

Fed. R. Civ. P. 23(e) ................................................................ 2, 12

Fed. R. Civ. P. 23(e)(1) ................................................................ 29

Fed. R. Civ. P. 23(e)(2) ........................................................... *Passim*

Fed. R. Civ. P. 23(e)(3) ............................................................ 22,26

Fed. R. Civ. P. 23(g)(1)(A) ........................................................... 29

Fed. R. Civ. P. 23(g)(1)(B) ........................................................... 29

Fed. R. Civ. P. 23(h)(1) ........................................................... 30, 31,

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs[1], on behalf of themselves and the Settlement Class, respectfully submit this Unopposed Motion for Preliminary Approval of the Class Action Settlement, supported by the Declaration of Class Counsel ("Joint Decl."), attached as **Exhibit B**.

## I.    INTRODUCTION

Defendant, The Neiman Marcus Group, LLC owns and operates luxury retail clothing and accessory stores across the country. Joint Decl. ¶ 3.  In the course of its business, Defendant collects and maintains a limited amount of personally identifiable information pertaining to its customers and employees. *Id*.

In May 2024, Defendant discovered an unauthorized party gained access to Snowflake, Inc.'s cloud data storage application used by the Defendant. *Id*. ¶ 4. Four class actions were filed against the Defendant related to the Data Incident in three federal district courts and transferred to this MDL. *Id*. ¶ 6. Plaintiffs recently filed a Consolidated Complaint against Defendant seeking damages and injunctive relief related to the Data Incident. *Id*.

To avoid the risks and expenses of litigation, the Parties agreed to a global settlement to resolve Plaintiffs' class claims. Joint Decl. ¶ 10. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as **Exhibit A**.

a non-reversionary all cash $3,500,000.00 Settlement Fund and valuable business practice changes.

The Court should find the Settlement is within the range of reasonableness necessary to grant Preliminary Approval under Fed. R. Civ. P. 23(e) and enter an order: (i) granting Preliminary Approval; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives; (iv) appointing John Heenan, Raph Graybill, Jason Rathod, and Devlan Geddes as Class Counsel; (v) approving the form of the Notices and the Notice Program; (vi) approving the Claim Form and the Claim Process; (vii) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator; (viii) establishing the opt-out and objection procedures and deadlines; and (ix) scheduling a Final Approval Hearing at which time the Court will consider whether to grant Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

## II.    PROCEDURAL HISTORY

1.    In or about May 2024, Defendant discovered that unauthorized individuals may have accessed Snowflake, Inc.'s network and downloaded data pertaining to Defendant's customers and employees. Joint Decl. ¶ 4. According to Defendant, the data of over 10 million customers and employees was acquired, including some combination of their names, email addresses, telephone numbers, and gift card information, with a much smaller minority having dates of birth and

the last four digits of Social Security numbers acquired. *Id.* Thereafter, pursuant to certain states' laws, Defendant began sending out notice letters to 64,472 affected persons, informing them their Personal Information had been compromised in the Data Incident. *Id*. ¶ 5.

2.  Following the Data Incident and commencing in August 2024, Defendant was named in the first of four class action lawsuits. *Id*. ¶ 6. The Related Actions, filed in the Southern District of Florida, District of Delaware, and the District of Montana, were materially and substantively identical, had overlapping claims, sought to represent the same putative class members, and arose from the Data Incident. *Id*.

3.  Following the filing of the initial complaint against Defendant, Plaintiffs' counsel consulted with multiple data experts to understand how the breach occurred, the type of information involved, and whether the information was published on the dark web or elsewhere. *Id*. ¶ 7. Plaintiffs' counsel prepared written discovery, including interrogatories and requests for production, drafted a comprehensive Rule 30(b)(6) notice of deposition topics, and began preparing an ESI protocol and a protective order. *Id.* In late August 2024, Plaintiffs and Defendant began discussing settlement, in conjunction with which she propounded informal discovery requests on Defendant to learn as much as possible about liability, the types of data at issue, the size of the breach, damages, and other settlement-related

issues. *Id*.

4.    As a result of the Joint Panel for Multidistrict Litigation's October 4, 2024, transfer order, the Related Actions were centralized in MDL-3126 as involving the Snowflake data breach. *Id*. ¶ 9. Following transfer to this Court, the Parties continued to negotiate the terms of a settlement agreeing to certain material terms on February 1, 2025. *Id*. ¶ 11.

5.    On February 3, 2025, the Parties filed a Notice of Settlement and Joint Motion to Stay All Deadlines Pending Final Approval of the Settlement, notifying the Court that all Parties were able to resolve the cases against Neiman. *Id*.

6.    Over the next several weeks, the Parties continued to negotiate at arms'-length over material terms, exchange informal discovery, and finalize the Agreement. The Parties signed the Agreement on May 1, 2025. *Id*.

7.    On May 2, 2025, Plaintiffs filed their Consolidated Complaint. *Id*.

8.    The Parties now seek Preliminary Approval of the Agreement.

## III.    MATERIAL TERMS OF THE SETTLEMENT

A.    **Settlement Class -** Plaintiffs seek Preliminary Approval of the following Settlement Class:

> [A]ll persons in the United States whose Personal Information was potentially compromised as a result of the Data Incident.

Agreement ¶ 62. Excluded from the Settlement Class are: (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the

Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement. *Id.*

**B.  Settlement Fund** - The Settlement provides for a non-reversionary all cash $3,500,000.00 Settlement Fund, which will be used to pay: (1) all Settlement Class Member Benefits; (2) any attorneys' fees and costs awarded by the Court to Class Counsel and any Service Awards awarded to the Class Representatives; and (3) all Settlement Administration Costs. *Id.* ¶¶ 62 and 71.

**C.  Settlement Class Member Benefits** - All eligible Settlement Class members may elect to receive: (1) a Documented Loss Cash Payment in a maximum amount of $2,500.00 per individual; and (2) two years of Credit Monitoring valued at $108.00 per person per year. *Id.* ¶ 75. All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the value of all Valid Claims. *Id*. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against without receiving a Settlement Class Member Benefit. *Id*.

### *Documented Loss Cash Payment*

All Settlement Class Members may submit a Claim Form for a Documented Loss Cash Payment up to $2,500.00, upon presentment of documented losses fairly traceable to the Data Incident and attest under penalty of perjury to incurring documented losses, supported by reasonable documentation. *Id.* These losses may

include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the applicable Data Incident through the date of claim submission; and miscellaneous expenses such as notary, facsimile, postage, copying, mileage, and long-distance telephone charges. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the identity protection and credit monitoring services offered as part of the notification letter provided by Defendant or otherwise. *Id*. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member will not receive a Cash Payment *Id*.

### *Credit Monitoring*

In addition to electing a Cash Payment, all Settlement Class Members may elect to submit a Claim for Credit Monitoring consisting of two years of "Identify Defense Plus" Credit Monitoring which includes comprehensive dark web monitoring, high-risk transaction monitoring, with real time alerts, security freeze, and $1 million in insurance coverage. *Id*.  The Credit Monitoring has a retail value

of $108.00 per person per year. Plaintiffs secured a fixed bid for provision of this benefit at $471,000. *Id.*

### *Business Practice Changes*

Plaintiffs have received assurances that Defendant has undertaken reasonable steps to further secure its systems and environments. *Id*. Those technological enhancements have been paid for by the Defendant and are not coming out of the Settlement Fund. Joint Decl. ¶ 13.

**D.    Notice to the Settlement Class** - The Parties have agreed on a comprehensive Notice Program, which includes Email Notice, Long Form Notice, Publication Notice, a Settlement Website, and a Settlement telephone line for frequently asked questions. *Id.* § VIII.

Within 15 days of Preliminary Approval, Defendant will provide the Settlement Administrator with a Class List containing, Settlement Class members' names and email addresses, if available. *Id.* ¶ 86. Within 30 days of receipt of the Class List, the Settlement Administrator will initiate Publication Notice (by digitally publishing the Settlement on the Internet and on select social media platforms) and by sending Email Notice to all Settlement Class members for which an email address has been provided by Defendant. *Id.* ¶ 87. Notice by publication shall be made for the purpose of creating awareness of the Settlement for those Settlement Class members for which emails bounce back or are otherwise undeliverable, and for those

for which the Defendant does not maintain email addresses. *Id*. The Long Form Notice shall also be posted on the Settlement Website and made available by mail upon request to the Settlement Administrator. *Id.* ¶ 87.

Settlement Class members may review the Long Form Notice, key documents and dates, and answers to frequently asked questions on the Settlement Website. *Id*. ¶ 89. By calling a toll-free telephone number, Settlement Class members can also receive answers to frequently asked questions and request the Long Form Notice and Claim Form. *Id*. ¶ 83(f).

The Notices will inform the Settlement Class of the Settlement's general terms, including a description of the Action, who is in the Settlement Class, and what claims will be released. Agreement, Exs. 1–3. All Notices shall include, among other information: a description of the Settlement's material terms; how to submit a Claim Form; the Claim Form Deadline; the deadlines to opt-out of or object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. *Id.* ¶ 86. The Long Form Notice also includes the opt-out and objection procedures. *Id.* ¶¶ 87–88.

**E.    Claim Submission Process** - To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by

the Claim Form Deadline. *Id.* § IX, Ex. 4. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address on the Claim Form. *Id.* ¶ 97. The Settlement Administrator will review all Claim Forms to determine their validity and eligibility. *Id.* ¶ 98. The Claims process includes procedures for the Settlement Administrator to identify and reject duplicate Claims; to take any reasonable steps to prevent fraud and abuse; to send a Notice of Deficiency to a Settlement Class Member whose Claim Form was rejected for containing incomplete or inaccurate information, and/or omitting required information in the Claim Form, allowing for the submission of information to validate the Claim; and to reduce or reject a Claim. *Id.* ¶¶ 98–100. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 75 days after the Effective Date. *Id*. ¶ 75. Cash Payments will be made electronically or by paper check, and an email will be sent to Settlement Class Members electing Credit Monitoring with activation instructions. *Id*. ¶¶ 107–108. Greater detail on the Claims process is in Section IX of the Agreement.

    **F.    Disposition of Residual Funds** - The Settlement is designed to exhaust the Settlement Fund. *Id*. ¶ 114. However, in the event there are funds remaining in the Settlement Fund, including from uncashed checks, 20 days following the 180-day check negotiation period, all remaining funds shall be distributed to the Montana

Justice Foundation (www.mtjustice.org), with the Court's approval. *Id.*

**G.    Settlement Administrator** - The proposed Settlement Administrator, Epiq, is a well-respected third-party administrator that has significant experience with data breach settlements. Joint Decl. ¶ 29; The Settlement Administrator shall effectuate the Notice Program, handle the Claims Process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits. *Id.* § VII. Additional responsibilities are specified in the Agreement. *Id.* ¶ 83. Epiq has estimated that its services will cost $208,239.00 and agreed to a hard cap of $365,000. *Id.*.

**H.    Opt-Out and Objection Procedures -** Consistent with the Settlement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the original Final Approval Hearing date. *Id.* ¶ 91. During the Opt-Out Period, they may mail an opt-out request to the Settlement Administrator including the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be opt-out of the Settlement Class. *Id.* Any Settlement Class member who does not timely opt-out shall be bound by the Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.*

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards. *Id.* ¶ 92. Objections must be mailed to the Clerk of the

Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. *Id.* To be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice (30 days before the original Final Approval Hearing date). *Id.* The objection requirements are in the Agreement, proposed Long Form Notice, and proposed Preliminary Approval Order, and will be on the Settlement Website. *Id.* ¶¶ 92–93 & Ex. 3.

**I.    Release of Claims -** Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the Settlement terms, including the Releases discharging the Released Claims against the Released Parties. *Id.* § XIII. The Released Claims are narrowly tailored to only claims arising out of or relating to the Data Incident. Joint Decl. ¶ 14,

**J.    Service Awards –** The Court shall approve any Service Awards for the Class Representatives payable from the Settlement Fund. Agreement ¶ 111. Class Counsel shall apply for $3,000.00 Service Awards for each Plaintiff. *Id.* The Settlement is not contingent on approval of the Service Awards, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 113. The Notices advise of the Service Awards that will be sought. *Id.*, Ex. 1–3.

**K.    Attorneys' Fees and Costs -** The Court shall determine the amount of any attorneys' fees and costs payable from the Settlement Fund. *Id.* ¶ 112. In the

Application for Attorneys' Fees, Costs, and Service Awards, Class Counsel shall apply for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. *Id.* The Settlement is not contingent on approval of the attorneys' fees and costs requested, and if the Court grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 113. The Notices will advise the Settlement Class of the amount of attorneys' fees Class Counsel intends to seek. *Id.*, Ex. 1–3.

## IV.   ARGUMENT

A class action may not be settled without the approval of the court. Fed. R. Civ. P. 23(e). Settlement approval "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Supreme Court has recognized the benefits of a proposed settlement of a class action can be realized only through settlement class certification. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

There is a "'strong judicial policy that favors settlements in class actions." *Burton v. Trinity Universal Ins. Co.*, No. CV 14-242-M-DWM, 2015 WL 11090362, at *2 (D. Mont. Nov. 17, 2015). The Court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Burton*, 2015 WL 11090362, at *2. At preliminary approval,

courts assess whether a class exists, consider factors for approval under Rule 23(e)(2), and then direct notice to the class and schedule a final approval hearing. *Burton*, 2015 WL 11090362, at *2.

**A.    The Settlement Class Should Be Certified.**

Plaintiffs must satisfy all Fed. R. Civ. P. 23(a) requirements (numerosity, commonality, typicality, and adequacy) and Fed. R. Civ. P. 23(b)(3) requirements (predominance and superiority). These requirements are met for settlement purposes.

**1.    Ascertainability** - Ascertainability is an implied Rule 23 prerequisite. Before a district court can consider whether a potential class satisfies Rule 23(a), it must find the proposed class is "adequately defined and clearly ascertainable." *Gordon v. New W. Health Servs.*, 2017 WL 365484, at *7 (D. Mont. Jan. 25, 2017) (Morris, C.J.). Class certification and ascertainability typically involve one inquiry because, without an adequate class definition, a court cannot ascertain who belongs in the class. A proposed class is ascertainable if it is adequately defined such that its membership is capable of determination. Ascertainability may be satisfied if it is "administratively feasible" for the court to determine whether a particular individual is a member, though this is not a certification prerequisite. *Briseno v. ConAgra Foods, Inc.*, 944 F.3d 1121 (9th Cir. 2017). Here, the Settlement Class is adequately defined and clearly ascertainable because the Settlement Class definition contains

sufficient objective criteria to allow an individual to determine whether he or she is a Settlement Class member—i.e., whether they were sent notice that their Personal Information was accessed during the Data Incident.

    **2.**    **Rule 23(a)** - Under Rule 23(a), the Court must determine whether: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each requirement is satisfied here.

    ***Numerosity*** - Rule 23(a)(1) requires that a class include so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted). As this Court observed, "classes of 16 to 39 members sometimes prove sufficiently numerous, depending on the facts of the case." *Gordon*, 2017 WL 365484, at *5. Here, the joinder of approximately 10 million Settlement Class members would certainly be impracticable, satisfying numerosity.

    ***Commonality*** - Rule 23(a)(2) requires a showing that there are questions of law or fact common to the class. Commonality is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is

capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is a permissive requirement, and "not all questions of fact and law need be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019–20; *Gordon*, 2017 WL 365484, at *5–6.

Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., In re PostMeds, Inc. Data Breach Litig.*, No. 23-cv-05710-HSG, 2024 WL 4894293, at *2 (N.D. Cal. Nov. 26, 2024) (commonality satisfied because claims turn on whether defendant had legal duty to use reasonable security measures to protect class members' personal information, whether that duty was breached, and whether defendant's data security was adequate to protect personal information). Here, as in other data breach cases, the claims turn on whether Defendant's security environment was adequate to protect the Settlement Class's Personal Information. That inquiry can be fairly resolved for all Settlement Class members once because it revolves around evidence that does not vary between members, at least for purposes of the Settlement. Indeed, the Data Incident impacted each Settlement Class member's Personal Information.

*Typicality* – As this Court has noted, the commonality and typicality analyses often overlap—both focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification. *Gordon*, 2017 WL 365484, at *6. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. "Under the 'permissive standards' of Rule 23(a)(3), 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon*, 150 F.3d at 1020.

Here, typicality is satisfied because Plaintiffs' interests are aligned with the Settlement Class in that they all allegedly received a notice letter informing them their Personal Information was accessed in the Data Incident and were therefore impacted by the same purportedly inadequate data security that allegedly harmed the rest of the Settlement Class. Their claims are based on the same legal theories and underlying event.

*Adequacy of Representation* - To satisfy constitutional due process concerns,

absent class members must be afforded adequate representation before entry of a judgment which binds them. *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 566 (9th Cir. 2019). Fed. R. Civ. P. 23(a)(4) requires the representative parties "fairly and adequately protect the interests of the class." This determination turns on two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003). Both components are met.

Like all Settlement Class members, Plaintiffs have claims against Defendant arising from the Data Incident and were similarly injured by Defendant's allegedly wrongful acts. Joint Decl. ¶ 15. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. *Id.* Thus, Plaintiffs and the Settlement Class have the same interests in recovering damages. Further, Plaintiffs have also diligently and adequately prosecuted the Action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class Counsel, acting in the best interest of the Settlement Class, and accepting the Classwide Settlement. *Id.* Plaintiffs' willingness to serve as Class Representatives demonstrates their serious commitment to bringing about the best results for the Settlement Class.

Further, proposed Class Counsel, who the Court already appointed on as MDL Lead Counsel, are adequate to represent the Settlement Class's interests and should be appointed as Class Counsel for the Settlement Class. In retaining these attorneys, Plaintiffs employed competent counsel who will "litigate vigorously on behalf of the entire class." *Anderson v. Boyne USA, Inc.*, 2023 WL 4235827, at *7 (D. Mont. June 28, 2023) (Morris, C.J.). With their extensive experience in class actions and other complex litigation, including data breach litigation, there can be no doubt Class Counsel are adequate. Joint Decl. ¶ 42. Class Counsel have litigated the Action, including, *inter alia*, evaluating the claims, preparing pleadings, pursuing informal discovery, consulting with data security experts, and complying with Court orders and requirements. *Id.* ¶ 43. Accordingly, Plaintiffs and Class Counsel will adequately protect the Settlement Class.

**3.    Rule 23(b)(3)** - Rule 23(b)(3) requires the court to find "questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case,

if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

*Predominance* – The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Hanlon*, 150 F.3d at 1022. In general, predominance is met when there exists generalized evidence which proves or disproves an issue or element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009).

Here, all Settlement Class members had their Personal Information compromised in the Data Incident and the security practices at issue did not vary. Thus, because these common questions represent a significant aspect of the case and they can be resolved for all Settlement Class members in a single adjudication, handling the dispute on a representative rather than on an individual basis is justified, satisfying predominance. *Id.*

*Superiority* – "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." All of these factors are present here. Adjudicating individual actions would be impractical. The amount in dispute for each Settlement Class member is too small, the technical issues too complex, and the expert testimony and document review too costly. Joint Decl. ¶ 45. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. *Id.* Accordingly, a class action is superior. *Id.*

Thus, the Settlement Class should be provisionally certified.

## B.    The Settlement Should Be Preliminarily Approved.

After determining settlement class certification is likely, the Court must determine whether the Settlement is worthy of preliminary approval and providing notice to the Settlement Class. This Court's discretion is to be exercised "in light of

the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).[2]

The question at the preliminary approval stage is whether the Court is likely to find the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2) and considering the Ninth Circuit traditional "*Churchill*" factors.[3]

The Rule 23(e)(2) factors are:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arms' length;
(C) the relief provided for the class is adequate, taking into account:

---

[2] Courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).

[3] Rule 23(e)(2) was amended in 2018 to include explicit class settlement approval factors. However, consistent with the Advisory Committee note to that rule amendment, courts in this Circuit have made clear the amendment does not entirely displace the traditional Ninth Circuit factors, which overlap with the express Rule 23(e)(2) factors. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2024) (citing Fed. R. Civ. P. 23 Advisory Committee's note to the 2018 amendment). Thus, Plaintiffs address them all for the Court's benefit.

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Churchill* factors are: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The Settlement warrants Preliminary Approval under Rule 23(e)(2) and *Churchill* factors.[4]

### 1. Adequacy of Representation (Rule 23(e)(2)(A) and *Churchill* Factor 5) - Both Class Counsel and the Class Representative have adequately represented the Settlement Class. Class Counsel investigated and litigated the facts and legal

---

[4] The seventh factor is inapplicable, and the eighth factor is best considered after Notice of the Settlement is sent to see if there is any opposition.

claims. Joint Decl. ¶ 50. Class Counsel's efforts to use informal discovery to learn what occurred to cause the Data Incident and the Personal Information impacted allowed for arm's-length and good-faith negotiations, without collusion. *Id.* ¶ 19. Class Counsel used their experience in complex class action litigation, including similar data breach actions, and devoted time and resources to the case. *Id.*

The Class Representatives also have demonstrated their adequacy by (i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit the initial investigation and development of the complaints; (iv) being available as needed; and (v) reviewing the terms of the Agreement. Joint Decl. ¶ 52. Plaintiffs' respective interests are coextensive and do not conflict with the interests of the Settlement Class. *Id.* ¶ 53. Plaintiffs have the same interest in the Settlement relief, and the absent Settlement Class members have no diverging interests. *Id.*

**2.    The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B) and *Churchill* Factor 6)** - This Circuit puts "a good deal of stock in the product of arms-length, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 625). There is "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D.

Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011); *see also Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *3 (D. Mont. Feb. 11, 2015) (finding no signs of collusion or other conflicts of interest).

The Settlement is the result of good-faith, informed, and arm's-length negotiations between experienced class action attorneys familiar with the legal and factual issues at stake. Joint Decl. ¶ 51. Class Counsel recommend approval of the Settlement after they thoroughly investigated and analyzed Plaintiffs' claims; engaged in informal discovery for the Data Incident; and consulted with data security experts, enabling them to gain an understanding of the evidence related to central questions in the Action and preparing them for well-informed settlement negotiations. *Id.* For these reasons, and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement.[5]

### 3.    The Adequacy of the Settlement Relief (Rule 23(e)(2)(C) and *Churchill* Factors 1–4)

- Although Plaintiffs believe their claims are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation poses

---

[5] None of the so-called "*Bluetooth*" factors are of concern. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011). First, Class Counsel will not receive a disproportionate distribution from the Settlement Fund. Second, there is no clear-sailing arrangement regarding the attorneys' fees Class Counsel will seek. Agreement ¶ 111. Third, there is no provision that unawarded attorneys' fees would revert to Defendant.

significant risks that make any recovery for the Settlement Class uncertain. In assessing the degree of risk of continued litigation, "the court evaluates the time and cost required." *Adoma v. Univ. of Phoenix, Inc*., 913 F.Supp.2d 964, 976 (E.D. Cal. 2012). "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* "The parties . . . save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something that they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (citation omitted).

Should the case continue, the Parties would engage in costly discovery (including retaining expert witnesses), in addition to class certification briefing and dispositive motion practice. Each step carries risks. *See*, *e.g.*, *Teeter v. Easterseals-Goodwill Northern Rocky Mountain, Inc.*, No. 4:22-cv-96, at * 6 (D. Mont.) (Morris, C. J.) (Dkt. 52) (internal citation and quotation omitted) (noting risks in order granting final approval of settlement of data breach class action); *In re Mednax Servs., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024). The Settlement's fairness is underscored by consideration of the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation.

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches").

Given the significant risks involved with further litigation, the Settlement provides meaningful Settlement Class Member Benefits, including Cash Payments and Credit Monitoring. In addition, the Claim Form submission process and distribution of Settlement Class Member Benefits is fair, convenient, and effective. The Settlement Administrator is highly qualified to manage the entire process. Joint Decl. ¶ 48. Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of receiving no relief.

Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. Joint Decl. ¶ 55. The Settlement, including disbursing the Settlement Class Member Benefits, is also not contingent on the attorneys' fee and costs award or the Service Awards. Agreement ¶ 111. As the Application for Attorneys' Fees, Costs, and Service Awards will detail, the 33.33% of the common Settlement Fund that will be sought is within the typical range of acceptable attorneys' fees in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Finally, there are no separate agreements to disclose under Rule 23(e)(3) because all of the Parties' agreements are in the Agreement. Joint Decl. ¶ 58.

This Settlement compares very favorably to the following approved, common fund, data breach settlements from around the country in light of class size and, in particular, the data elements involved, which were more sensitive there than here: *Desue, et al. v. 20/20 Eye Care Network Inc., et al.*, No. 0:21-cv-61275-RAR, 2023 WL 4420348, (S.D. Fla. July 8, 2023) (approving $4,200,000 settlement for about 3,000,000 class members in breach involving social security numbers and health insurance information among other data elements); *In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 20, 2020) (approving $117,500,000 settlement for 194,000,000 class members in breach involving phone numbers, dates of birth, passwords and security question answers among other data elements); *Adlouni v. UCLA Health Sys. Auxiliary, et al.*, No. BC589243 (Cal. Sup. Ct., Los Angeles Cnty. June 28, 2019) (approving $2,000,000 settlement for 4,500,000 class members in breach involving social security numbers and medical information among other data elements); *In re Target Cop. Customer Data Sec. Litig.*, No. 0:14-md-02522, ECF No. 758 (D. Minn. May 12, 2016) (approving $10,000,000 settlement for 97,500,000 class members in breach involving credit card numbers). The Settlement also compares very favorably *Teeter v. Easterseals-Goodwill Northern Rocky Mountain, Inc.*, No. 4:22-cv-96, at * 6 (D. Mont.) (Dkt. 52) (Morris, C. J.) since that settlement was on a claims-made basis, while this settlement establishes a non-reversionary common fund that provides a

baseline of classwide relief. Thus, the fourth *Churchill* factor is also satisfied.

**4.    The Equitable Treatment of Settlement Class Members (Rule 23(e)(2)(D))** - All Settlement Class Members are given an equal opportunity to claim Settlement Class Member Benefits, with the option to be reimbursed in cash for documented losses up to $2,500.00 and two years of Credit Monitoring. All Settlement Class Member Cash Payments may be subject to a *pro rata* increase or decrease, depending on the value of all Valid Claims. Thus, the Settlement Class Member Benefits distribution method will be equitable and effective.

Accordingly, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class members.

**C.    The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator.**

Plaintiffs have been integral to Class Counsel throughout litigation and settlement, assisting with the preparation of the Complaint, providing necessary factual information, communicating with Class Counsel when needed, and reviewing the Settlement documents. Joint Decl. ¶ 54. Moreover, Plaintiffs are committed to continuing to assist Class Counsel through Final Approval. *Id.* ¶ 49. Because Plaintiffs are adequate, the Court should appoint them as Class Representatives. *See* § IV.A., *supra*.

For the same reasons discussed above for adequacy of representation, the Court should designate John Heenan, Raph Graybill, Jason Rathod, and Devlan

Geddes as Class Counsel. Fed. R. Civ. P. 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who are leaders in the class action field with extensive experience prosecuting and resolving complex class actions. Joint Decl., Exs. 1–5. Before commencing litigation, they investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information regarding the Data Incident. *Id.* ¶ 47. Class Counsel has devoted substantial time and resources to the Action and will continue to do so. *Id.*

Finally, subject to Court approval, the Parties have agreed that Epiq should be the Settlement Administrator. Epiq has a long history of successfully administering class action settlements.

### D. The Notice Program Will Provide the Best Notice Practicable and the Claim Process is Reasonable.

Under Fed. R. Civ. P. 23(e)(1), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.

Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Churchill Vill., L.L.C.*, 361 F.3d 566, 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, Fed. R. Civ. P. 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

The Notice Program satisfies the foregoing criteria. Notice will be directly disseminated to all individuals who fall within the Settlement Class definition and whose names and email addresses can be reasonably identified from Defendant's records, as well as through publication on digital media. In addition, the Settlement Administrator will host the Settlement Website containing relevant information about the Settlement and maintain the toll-free telephone line. Further, the Notices include, among other information: a description of the material terms of the

Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Agreement § VIII. The Long Form Notice and Settlement Website will also detail the opt-out and objection procedures approved by the Court. Finally, the Notice Program satisfies the requirements of Rule 23(h)(1), as the Notices will notify the Settlement Class that Class Counsel may apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs, and for Service Awards for the Class Representatives. *Id.* Thus, the Court should approve the Notice Program, including the form and content of the Notices. Agreement, Exs. 1–3.

The Court should also approve the Claim Form and Claim Process. The Claim Form is easily understood and may be submitted online via the Settlement Website or U.S. Mail sent to the Settlement Administrator. *Id.* ¶ 97. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of the Cash Payment to which the Settlement Class Member may be entitled, and the Claim review process is robust. *Id.* ¶¶ 98–102.

### E.    Proposed Schedule of Post-Settlement Events

Consistent with the Agreement, Plaintiffs propose the schedule below. Plaintiffs request the Final Approval Hearing be scheduled for the week of October 13, 2025, or soon thereafter based upon the Court's availability.

| | |
|---|---|
| Deadline to make Class List available to Class Counsel and Settlement Administrator | 15 days after entry of the Preliminary Approval Order |
| Deadline to commence Notice Program | Within 30 days following receipt of the Class List |
| Deadline to complete Notice Program | 45 days before the initial scheduled Final Approval Hearing date |
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards | 45 days before the initial scheduled Final Approval Hearing date |
| Opt-Out Period Ends | 30 days before the initial scheduled Final Approval Hearing date |
| Objection Period Ends | 30 days before the initial scheduled Final Approval Hearing date |
| Claim Form Deadline | 15 days before the initial scheduled Final Approval Hearing date |
| Final Approval Hearing | **Week of October 13, 2025** (or soon thereafter based on the Court's availability). |

## V.    CONCLUSION

Plaintiffs respectfully request the Court: (1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Class for settlement purposes; (3) appoint Plaintiffs as Class Representatives; (4) appoint John Heenan, Raph

Graybill, Jason Rathod, and Devlan Geddes as Class Counsel; (5) approve the Notices and Notice Program, including the opt-out and objection procedures; (6) approve the Claim Form and Claims Process; (7) appoint Epiq as the Settlement Administrator; (8) schedule the Final Approval Hearing; and (9) enter the proposed Preliminary Approval Order, attached as ***Exhibit C***.

Dated: May 9, 2025.                         Respectfully submitted,

*/s/ John Heenan*
John Heenan
**Heenan & Cook, PLLC**
1631 Zimmerman Trail
Billings, MT 59102
Tel. 406.839.9091
john@lawmontana.com

*Co-Lead Counsel for Plaintiff*
*and the Settlement Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with District of Montana Local Rule 7.1(d)(2), I certify that this brief has 7,558 words, excluding the caption, certification of compliance, table of contents and authorities, and certificate of service. The Court granted Plaintiffs' motion to exceed the 6,500 word limit.

*/s/ John Heenan*
John Heenan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via email via the CM/ECF system on all counsel of record on this 9th day of May, 2025.

*/s/ John Heenan*
John Heenan
