## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

IN RE: SNOWFLAKE, INC., DATA
SECURITY BREACH LITIGATION

This Document Relates only to Defendant:
THE NEIMAN MARCUS GROUP LLC

CASE No.: 2:24-MD-3126-BMM

## SETTLEMENT AGREEMENT

This class action Settlement Agreement,[1] dated as of the date last signed below, is entered into between Plaintiffs, on behalf of themselves and the Settlement Class, on the one hand, and Defendant, The Neiman Marcus Group LLC, on the other hand. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

## I.    Background

1.    Defendant owns and operates luxury physical and online retail clothing and accessory stores across the country. In the course of operating its business, Defendant collects and maintains certain Personal Information pertaining to its customers and employees.

2.    In May of 2024, Defendant discovered it was the victim of a data incident involving unauthorized access to its cloud data storage account.

3.    The affected Personal Information varied by individual, but included names, email addresses, telephone numbers, gift card information, dates of birth, and the last four digits of Social Security numbers.

4.    Thereafter, pursuant to the requirements of certain states' laws, Defendant began

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II herein.

sending out notice letters to some of the affected persons, informing them that their Personal Information had been compromised in the Data Incident.

5.     As a result of the Data Incident, commencing in August of 2024, Defendant was named in four putative Related Actions filed in the Southern District of Florida, District of Delaware, District of New Jersey, and the District of Montana, that were materially and substantively identical, as they had overlapping claims, sought to represent the same putative class members, and arose out of the same Data Incident.

6.     Following the filing of the initial complaints against Defendant, Plaintiffs' counsel consulted with multiple data experts to understand how the Data Incident occurred, the type of information involved, and whether the information was published on the dark web or elsewhere.

7.     Plaintiffs prepared written discovery, including interrogatories and requests for production, drafted a comprehensive Rule 30(b)(6) notice of deposition topics, and began preparing an ESI protocol and a protective order.

8.     Plaintiffs and Defendant began discussing resolution of the Action in late August 2024. In conjunction with the discussion, Plaintiffs propounded informal discovery requests on Defendant to learn as much as possible about liability, the types of data at issue, the size of the Data Incident, damages, and other settlement-related issues.

9.     As a result of the Joint Panel for Multidistrict Litigation's October 4, 2024, order creating MDL-3126 centralizing all actions involving breaches of Snowflake customer accounts, the Related Actions were transferred to this Court in mid-October 2024.

10.     Following the transfer of all actions to the District of Montana, the Parties continued to negotiate the terms of a settlement. On February 1, 2025, the Parties agreed to material terms, and on February 3, 2025, the Parties filed a Notice of Settlement and Joint Motion to Stay

All Deadlines Pending Final Approval of the Settlement. [ECF No. 318]. The Court granted the Joint Motion to Stay All Deadlines on February 3, 2025. [ECF No. 319].

11.    Plaintiffs filed their Consolidated Complaint on or about April 30, 2025.

12.    The Parties now agree to settle the Action and Related Actions entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendant has entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint and Related Actions, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. Defendant does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint (and similarly does not concede any of the allegations in the other complaints in the Related Actions), and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint and Related Actions. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. Based upon their investigation and the exchange of information, as set forth above, the Parties have determined that the Settlement set forth in this Agreement is in their respective best interests, and that the Agreement is fair, reasonable, and adequate. The Parties intend this Agreement to bind Plaintiffs, Defendant, and all Settlement Class Members.

3

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficient of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.    Definitions

14.    "**Action**" or "**Litigation**" means the Consolidated Complaint and any other complaints against Defendant within the multi-district litigation: *In Re: Snowflake, Inc., Data Security Breach Litigation* No. MDL-3126, pending in the United States District Court for the District of Montana.

15.    "**Agreement**" or "**Settlement**" or "Settlement Agreement" means this Settlement Agreement signed by Plaintiffs and Defendant and all of its attachments and exhibits, which the Parties understand and agree set forth all material terms and conditions of the Settlement of the Action between them and which is subject to approval by the Court.

16.    "**Application for Attorneys' Fees, Costs, and Service Awa**rds" means the application made with the Motion for Final Approval seeking Service Awards for Class Representatives and Class Counsel's attorneys' fees and reimbursement for costs.

17.    "**CAFA Notice**" means the notice required by the Class Action Fairness Act of 2008, 28 U.S.C. § 1715 ("CAFA").

18.    "**Cash Payments**" means Documented Loss Cash Payments.

19.    "**Claim**" means the submission of a Claim Form by a Claimant.

20.    "**Claim Form**" means the proof of claim, substantially in the form attached hereto as *Exhibit 4*, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator.

21.    "**Claim Form Deadline**" shall be 15 days after the initial scheduled Final Approval

Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class Member to be eligible for a Cash Payment.

22.    "**Claimant**" means an individual that submits a Claim Form.

23.    "**Claims Process**" means the process by which Claimants may submit a Claim either online or by mail to the Settlement Administrator to elect Settlement Class Member Benefits under the Settlement.

24.    "**Class Counsel**" means John Heenan, Raph Graybill, Jason Rathod, and Devlan Geddes.

25.    "**Class List**" means a list of all individuals in the Settlement Class. Defendant shall prepare and provide the Class List to the Settlement Administrator for Notice using information in its records. Class List shall include Settlement Class members' names and email addresses, if available.

26.    "**Class Representatives**" means those Plaintiffs the Court appoints to represent the Settlement Class in the Preliminary Approval Order and Final Approval Order.

27.    "**Complaint**" or "**Consolidated Complaint**" means the Consolidated Complaint filed on or about April 30, 2025, against Defendant consolidating the Related Actions within the multi-district litigation entitled: *In Re: Snowflake, Inc., Data Security Breach Litigation* No. MDL-3126, pending in the United States District Court for the District of Montana.

28.    "**Court**" means the United States District Court for the District of Montana and the Judge(s) assigned to the Action.

29.    "**Credit Monitoring**" means two years of credit monitoring that Settlement Class Members may elect under Section V herein.

30.    "**Data Incident**" means the alleged incident that occurred in or around May of

2024, in which unauthorized third parties purportedly gained access to Settlement Class members' Personal Information from Defendant's computer systems.

31. "**Defendant**" means The Neiman Marcus Group LLC.

32. "**Defendant's Counsel**" means Neil Gilman and P. Reiko Koyama of Hunton Andrews Kurth LLP, and Neil Westesen and Pamela Garman of Crowley Fleck PLLP.

33. "**Documented Loss Cash Payment**" means the Settlement Class Member Benefit that Settlement Class Members, who incurred documented losses, may elect under Section V herein.

34. "**Effective Date**" of this Agreement means the last date by which all of the following have occurred: (a) the Parties have executed this Agreement; (b) the Parties have submitted to the Court and the Court has entered the Final Approval Order without material changes to the Parties' proposed Final Approval Order; and (c) the time for seeking rehearing, appellate or other review of the Final Approval Order has expired, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing review, appeal, or certiorari could be taken has finally expired.

35. "**Email Notice**" means the email notice of the Settlement, substantially in the form attached hereto as *Exhibit 1*, that the Settlement Administrator shall disseminate to the Settlement Class by email to those on the Class List for which Defendant possesses an email address.

36. "**Escrow Account**" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

37. "**Final Approval**" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for

Final Approval.

38.     "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards.

39.     "**Final Approval Order**" means the final order that the Court enters granting Final Approval of the Settlement. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel.

40.     "**Long Form Notice**" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit 2***, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail on request made to the Settlement Administrator.

41.     "**Motion for Final Approval**" means the motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

42.     "**Motion for Preliminary Approval**" means the motion that Plaintiffs shall file with the Court seeking Preliminary Approval of the Settlement.

43.     "**Notice**" means the Email Notice, Long Form Notice, Settlement Website, Settlement telephone line, and Publication Notice that Plaintiffs and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

44.     "**Notice Program**" means the methods provided for in this Agreement for giving Notice and consists of the Email Notice, Publication Notice, Long Form Notice, Settlement Website, and Settlement telephone line.

45.     "**Notice of Deficiency**" means the notice sent by the Settlement Administrator to a Settlement Class Member who has submitted an invalid Claim.

46.     "**Objection Period**" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

47.     "**Opt-Out Period**" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

48.     "**Party**" means each of the Plaintiffs and the Defendant, and "Parties" means Plaintiffs and Defendant collectively.

49.     "**Personal Information**" means Settlement Class members' information that may have been exposed in the Data Incident, which may include: names, email addresses, dates of birth, gift card information, partial credit card numbers, and the last four digits of Social Security numbers.

50.     "**Plaintiffs**" means Marc Reichbart, Jamilla Sherman, Chrystal Pelosi, Anastasia Kouriatova, and Ron Slomowicz.

51.     "**Preliminary Approval**" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached to the Motion for Preliminary Approval.

52.     "**Preliminary Approval Order**" means the order preliminarily approving the Settlement and proposed Notice Program.

53.     "**Publication Notice**" means the Settlement notice, substantially in the forms attached hereto as ***Exhibit 3***, that the Settlement Administrator shall digitally publish on the internet and on select social media platforms.

54.     "**Related Actions**" means the following actions that were transferred into the

8

Action: *Marc Reichbart v. Neiman Marcus Group LLC and Snowflake, Inc.*, No. 24-61389 (S.D. Fla.), No. 24-00154 (D. Mont.); *Jamillah Sherman v. The Neiman Marcus Group, LLC*, No. 24-00959 (D. Del.), No. 24-00152 (D. Mont.); *Chrystal Pelosi v. The Neiman Marcus Group LLC*, No. 24-08814 (D.N.J.), No. 24-00168 (D. Mont.); and *Natalie Gianne v. The Neiman Marcus Group LLC and Snowflake, Inc.*, No. 24-00102 (D. Mont.).

55.    "**Releases**" means the releases and waiver set forth in Section XIII of this Agreement.

56.    "**Released Claims**" means the claims described in Section XIII of this Agreement.

57.    "**Released Parties**" means (1) Defendant and its present and former parents, subsidiaries, divisions, departments, worldwide affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, clients, customers, data owners, associated third parties, predecessors, successors and assigns, and any other person acting on Defendant's behalf, in their capacity as such; and (2) Defendant Snowflake Inc., and its present and former parents, subsidiaries, divisions, departments, worldwide affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, subrogees, trustees, executors, administrators, clients, customers, data owners, associated third Parties, predecessors, successors and assigns. It is understood that to the extent a Released Party is not a party to the Agreement, all

such Released Parties (including all Snowflake Parties) are intended third-party beneficiaries of the Agreement and may enforce the Agreement as if they were parties to the Agreement.

58.    "**Releasing Parties**" means (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i-iv).

59.    "**Service Awards**" shall mean the payment the Court may award the Class Representatives for their services on behalf of the Settlement Class.

60.    "**Settlement Administrator**" means Epiq Class Action & Claims Solutions, Inc. or "Epiq".

61.    "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator regarding Notice and Settlement administration.

62.    "**Settlement Class**" means all persons who live in the United States whose Personal Information was potentially compromised as a result of the Data Incident. Excluded from the

Settlement Class are: (a) all persons who are governing board members of Defendant; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement.

63.    "**Settlement Class member**" means any member of the Settlement Class.

64.    "**Settlement Class Member**" means any member of the Settlement Class who has not opt-ed out of the Settlement.

65.    "**Settlement Class Member Benefit**" means the Documented Loss Cash Payment and Credit Monitoring that Settlement Class Members may be entitled to elect under the Settlement.

66.    "**Settlement Fund**" means the non-reversionary $3,500,000.00 all cash fund that Defendant has agreed to pay under the terms of the Settlement.

67.    "**Settlement Website**" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

68.    "**Snowflake Parties**" means Defendant Snowflake Inc., and its present and former parents, subsidiaries, divisions, departments, worldwide affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, stockholders, heirs, agents, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees,

licensors, independent contractors, subrogees, trustees, executors, administrators, clients, customers, data owners, associated third parties, predecessors, successors and assigns.

69.    "**Valid Claim**" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

### III.    Settlement Fund

70.    Within 30 days after Preliminary Approval and receipt of all necessary information required to make payment (e.g., wiring instructions and a W-9 form), Defendant shall deposit or cause to be deposited $200,000.00 in cash into the Escrow Account to allow the Settlement Administrator to pay Settlement Administration Costs.  Within 15 days after the Effective Date, Defendant shall deposit or cause to be deposited the remaining $3,300,000.00 into the Escrow Account. The $3,500,000.00 shall constitute the Settlement Fund. Once funded, the Defendant shall have no further financial obligation under the Settlement.

71.    No funds shall revert to Defendant, except in the event this Settlement is voided, cancelled, or terminated pursuant to the terms of the Agreement.

72.     The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to those Settlement Class Members who submit Valid Claims; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel or other Plaintiffs' counsel; and (4) all Settlement Administration Costs.

73.     The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. The funds shall earn interest and all interest shall be for the benefit of the Settlement Class. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise shall be paid from the Escrow Account, including any taxes or tax detriments that may be imposed on Defendant, Defendant's Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

74.     Other than the payment of the Settlement Fund monies as described in Paragraph 70 of this Agreement, Defendant shall have no responsibility, financial obligation, or liability whatsoever with respect to the Settlement Fund of Escrow Account, investment of the Settlement Fund or Escrow Account, payment of federal, state, and local income, employment, unemployment, excise and any other taxes, penalties, interest or other charges related to taxes imposed on the Settlement Fund or Escrow Account or its disbursement, payment of

administrative, legal, accounting, or other cost occasioned by the use or administration of the Settlement Fund or the Escrow Account.

## IV.    <u>Certification of the Settlement Class</u>

75.    Plaintiffs shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes. Defendant agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this Action shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendant shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

## V.    <u>Settlement Consideration</u>

76.    All Settlement Class Members may submit a Claim to elect a Documented Loss Cash Payment and for Credit Monitoring. Settlement Class Members who do not submit a Valid Claim will release their claims against Defendant without receiving a Settlement Class Member Benefit.

### a.    **Documented Loss Cash Payment**

All Settlement Class Members may submit a claim for a Documented Loss Cash Payment under this section for up to $2,500.00 per Settlement Cass Member upon presentment of documented losses related to the Data Incident. To receive a documented loss payment, a Settlement Class Member must elect Documented Loss Cash Payment on the Claim Form attesting under penalty of perjury to incurring documented losses. Settlement Class Members will be required to submit reasonable documentation supporting the losses. The following conditions must

also be met: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; (iii) the loss occurred between May 1, 2024 and the Claims Deadline; (iii) the loss has not already been covered by another source; and (iv) the claimant made reasonable efforts to avoid the loss or seek reimbursement for the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance. Documented Losses may include, without limitation, the unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud or other misuse of Personal Information. To receive reimbursement for any Documented Loss, Settlement Class Members must submit supporting documentation of the loss and a description of how the loss is more likely than not caused by the Incident, if not readily apparent from the documentation.

If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member will not receive a Documented Loss Cash Payment.

   b.  **Credit Monitoring**

In addition to electing a Documented Loss Cash Payment, all Settlement Class Members may also Claim two years of "Identify Defense Plus" Credit Monitoring which includes comprehensive dark web monitoring, high risk transaction monitoring, with real time alerts, security freeze, and $1 million in insurance coverage. The retail cost of the Credit Monitoring is $108.00 per year.

   77.  **Order of Distribution of Funds and *Pro Rata* Adjustments on Cash Payments**

In the event the amount of Valid Claims for Documented Loss Cash Payments and the cost of Credit Monitoring exhausts the amount of the Settlement Fund, the Cash Payments will be reduced

*pro rata* accordingly. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring, and then for Cash Payments for documented losses. Any *pro rata* decreases will be on an equal percentage basis.

78.    **Business Practice Changes** – Plaintiffs have received assurances that Defendant has undertaken reasonable steps to further secure its systems and environments.

79.    **Confirmatory Discovery** – Before signing this Agreement, Defendant provided Plaintiffs with a declaration including but not limited to information regarding the facts and circumstances of the Data Incident and Defendant's response thereto, the number of people impacted by the Data Incident and to whom notice was sent, the type of information that was impacted in the Data Incident, and the changes and improvements that have been made by Defendant to best protect class members' Personal Information from future unauthorized disclosure.

## VI.    <u>Settlement Approval</u>

80.    Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Class Counsel and Defendant.

81.    The Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) appoint John Heenan, Raph Graybill, Jason Rathod, and Devlan Geddes as Class Counsel; (4) appoint Plaintiffs who sign this Agreement as Class Representatives; (5) approve the Notice

Program set forth herein and approve the form and content of the Notices of the Settlement; (6) approve the Claim Process and Claim Form; (7) approve the procedures for individuals in the Settlement Class to opt-out of or object to the Settlement; (8) stay the Action and Related Actions pending Final Approval of the Settlement; and (9) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and Defendant's Counsel.

## VII.    Settlement Administrator

82.    The Parties agree that, subject to Court approval, Epiq shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

83.    The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Documented Loss Cash Payments to Settlement Class Members who submit Valid Claims.

84.    The Settlement Administrator's duties include to:

a.    Within 10 days of filing the Motion for Preliminary Approval, cause a CAFA Notice to be served upon the appropriate state and federal officials. All expenses associated with CAFA Notice shall be payable from the Settlement Fund.

b.    Complete the Court-approved Notice Program by noticing the Settlement Class by Email Notice and Publication Notice, sending Long Form Notices and paper Claim Forms on request from individuals in the Settlement Class, reviewing Claim Forms, notifying Claimants

of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

       c.     Establish and maintain the Settlement Fund in the Escrow Account approved by the Parties;

       d.     Establish and maintain a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

       e.     Establish and maintain the Settlement Website to provide important information about the Settlement and to receive electronic Claim Forms;

       f.     Establish and maintain an automated toll-free telephone line for the Settlement Class to call with Settlement-related inquiries, and answer frequently asked questions of individuals in the Settlement Class who call with or otherwise communicate such inquiries;

       g.     Respond to any mailed Settlement Class member inquiries;

       h.     Process all opt-out requests from the Settlement Class;

       i.     Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notices of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

       j.     In advance of the Final Approval Hearing, prepare a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, providing the names of each individual in the Settlement Class who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and

obtain Final Approval;

        k.     Distribute, out of the Settlement Fund, Cash Payments by electronic means, such as Venmo or Paypal, or by paper check;

        l.     Send Settlement Class Members who elect Credit Monitoring emails instructing how to activate their Credit Monitoring service;

        m.     Pay Court-approved attorneys' fees and costs, and Service Awards out of the Settlement Fund;

        n.     Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel;

        o.     Make any required tax filings and pay any required taxes out of the Settlement Fund; and

        p.     Perform any other Settlement Administration function at the instruction of Class Counsel and Defendant's Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

85.     The Notice Program and Notices may be revised as agreed upon by the Parties prior to submission to the Court for approval. Immaterial revisions to the Notices may also be made prior to dissemination.

**VIII.**     **Notice to the Settlement Class**

86.     Defendant will serve or cause to be served the CAFA Notice no later than 10 days after this Agreement is filed with the Court.

87.     Defendant will make available to Class Counsel and the Settlement Administrator the Class List no later than 15 days after entry of the Preliminary Approval Order.

88.     Within 30 days following receipt of the Class List, the Settlement Administrator

19

shall commence the Notice Program provided herein, using the forms of Notice approved by the Court. Notice shall be sent by email to all Settlement Class members for whom Defendant maintains email addresses. Notice by publication shall be made for the purpose of creating awareness of the Settlement for those Settlement Class members for which emails bounced back or otherwise undeliverable and for those for which the Defendant does not maintain email addresses. The Long Form Notice shall also be posted on the Settlement Website.

89.    The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for individuals in the Settlement Class to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Defendant's Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

90.    The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claims Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

91.    Pursuant to the Settlement Administrator' digital notice plan, Publication Notice shall be made in the form of banner advertisements on the Internet (to be approved by the Parties) and across specified social media platforms for the purpose of creating awareness about the Settlement.

92.    ***Opt-Outs –*** The Long Form Notice shall include a procedure for individuals in the Settlement Class to opt-out of the Settlement. The Email Notice shall direct individuals in the Settlement Class to review the Long Form Notice to obtain the opt-out instructions. The Publication Notice will direct individuals to the Settlement Website where the Long Form Notice will be available. Individuals in the Settlement Class may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The Parties will explore whether an online opt-out procedure is feasible. The opt-out request must be personally signed by the Settlement Class member with a "wet" signature and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any individual in the Settlement Class who does not timely and validly request to opt out shall be bound by the terms of this Agreement even if he or she does not submit a Valid Claim.

93.    ***Objections –*** The Long Form Notice also shall include a procedure for the Settlement Class to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards. The Email Notice shall direct the Settlement Class to review the Long Form Notice to obtain the objection instructions. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection

Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

94.    For an objection to be considered by the Court, the objection must also set forth:

a.    the name of this Action;

b.    the objector's full name, mailing address, telephone number, and email address (if any);

c.    the specific reasons for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

d.    the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection and the caption of each case in which the objector has made such objection.

e.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

f.    the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

g.      any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

h.      the identity of all counsel (if any) representing the objector and whether they will appear and address the Court at the Final Approval Hearing;

i.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

j.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

k.      the objector's signature (an attorney's signature is not sufficient).

95.    Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel.

96.    The Notice Program shall be completed no later than 45 days before the original date set for the Final Approval Hearing.

## IX.    Claim Form Process and Disbursement of Cash Payments

97.    The Notice will explain to the Settlement Class that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

98.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

99.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before

designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

100.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

101.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

102.    Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or

omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Deficiency is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless Defendant and Class Counsel otherwise agree.

103.    Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

a.    Failure to fully complete and/or sign the Claim Form;

b.    Illegible Claim Form;

c.    The Claim Form is fraudulent;

d.    The Claim Form is duplicative of another Claim Form;

e.    The Claimant is not a Settlement Class Member;

f.    The Claimant submitted a timely and valid request to opt-out of the Settlement Class.

g.    The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h.      Failure to submit a Claim Form by the Claim Form Deadline; and/or

i.      The Claim Form otherwise does not comply with the requirements of this Settlement.

104.    The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.      The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

b.      A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this paragraph.

c.      If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

d.      The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

105.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

106.    No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

107.    No later than 75 days after Final Approval or 75 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

108.    Cash Payments to Settlement Class Members will be made electronically or by paper check. Settlement Class Members with Valid Claims shall receive an email instructing them to select the type of payment they wish to receive. Upon issuance of the email, Settlement Class Members shall have 30 days to select their method of payment. Settlement Class Members who do not open their email or provide incorrect or incomplete electronic payment information shall receive a paper check in the mail. Settlement Class Members receiving payment by check shall have 180 days to negotiate the check.

109.    The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that elected Credit Monitoring with information on how to enroll in the Credit Monitoring, including the activation code.

X.    **Final Approval Order and Final Judgment**

110.    Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the original date set for the Final Approval Hearing. At the Final Approval Hearing, the Court may choose to hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service Awards, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

111. At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to grant the Application for Attorneys' Fees, Costs, and Service Awards. Such proposed Final Approval Order shall, among other things:

      a.      Determine that the Settlement is fair, adequate and reasonable;

      b.      Finally certify the Settlement Class for settlement purposes only;

      c.      Determine that the Notice Program satisfies Due Process requirements;

      d.      Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

      e.      Release Defendant and the Released Parties from the Released Claims; and

      f.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.    Service Awards, Attorneys' Fees and Costs

112. ***Service Awards*** – In recognition of the time and effort the Class Representatives expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $3,000.00 each. If approved, the Service Awards shall be paid by the Settlement

Administrator out of the Settlement Fund within 20 days of the Effective Date. The Service Award payments to the Class Representatives shall be separate and apart from their entitlement to benefits from the Settlement Fund.

113.    ***Attorneys' Fees and Costs*** – Class Counsel shall apply to the Court for an award of attorneys' fees of up to one-third of the Settlement Fund, plus reimbursement of costs. The attorneys' fees and cost awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel, within 20 days of the Effective Date.

114.    This Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after all material terms of the Settlement.

**XII.    Disposition of Residual Funds**

115.    The Settlement is designed to exhaust the Settlement Fund. In the event there are funds remaining from uncashed checks in the Settlement Fund 20 days following the 180-day check negotiation period, all remaining funds shall be distributed to a cy pres recipient agreed to by the Parties and approved by the Court. The Parties shall designate their proposed recipient in the Final Approval Order.

**XIII.    Releases**

116.    As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights,

claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the Data Incident; or (b) any of the alleged violations of laws or regulations cited in the Complaint, the Action, or the Related Actions.

117.    Plaintiffs and Settlement Class Members covenant and agree they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

118.    Individuals in the Settlement Class who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits under the Settlement. With respect to the Released Claims, Plaintiffs and Settlement Class Members, expressly understand and acknowledge it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiffs and Defendant with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the

extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

119.    Plaintiffs or Settlement Class Members may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action and Related Actions shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash Payment from the Settlement.

120.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

31

XIV. **Termination of Settlement**

121.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

b.    The Court has entered the Preliminary Approval Order;

c.    The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

d.    The Effective Date has occurred.

122.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

123.    Defendant shall have the option to terminate this Agreement if more than 1% of the Settlement Class opt-out of the Settlement. Defendant shall notify Class Counsel and the Court of its intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

124.    In the event that the Settlement Agreement is not approved by the Court, the Settlement Agreement is terminated in accordance with its terms, or otherwise fails to become effective, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval, provided, however, that no party may use subsequent legal developments or other intervening events, other than decision(s) denying or reversing approval of the Agreement, as justification for renegotiating the Settlement. Failing this, (a) the Parties shall be restored to their respective positions in the Action and shall jointly request that all scheduled litigation deadlines

be reasonably extended by the Court so as to avoid prejudice to any Party or litigant, which extension shall be subject to the decision of the Court; (b) Defendant will still bear any costs of Settlement Administration through the date of termination, and (c) the terms and provisions of the Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement, including certification of the Settlement Class for settlement purposes only, shall be treated as vacated, *nunc pro tunc*. Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of any attorneys' fees and Costs awarded to Class Counsel shall constitute grounds for cancellation or termination of the Settlement Agreement.

125.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendant. However, Defendant shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid by Defendant. The Settlement Administrator shall return all remaining amounts in the Settlement Fund to Defendant within 21 days of termination.

## XV.    **Effect of Termination**

126.    The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendant's, and Defendant's Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims, and defenses will be

retained and preserved.

127.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

**XVI.    No Admission of Liability**

128.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendant has denied and continues to deny each of the claims and contentions alleged in the Complaint. Defendant specifically denies that a class could or should be certified in the Action or Related Actions for litigation purposes. Defendant does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action or Related Actions.

129.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best

interests of the Settlement Class.

130.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

131.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or the Settlement Class, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

132.    In addition to any other defenses Defendant may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

**XVII.  Miscellaneous Provisions**

133.    *Gender and Plurals.* As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

134.    *Binding Effect*. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

135. ***Cooperation of Parties***. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

136. ***Obligation to Meet and Confer***. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

137. ***Integration and No Reliance***. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

138. ***No Conflict Intended***. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

139. ***Governing Law***. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Montana, without regard to the principles thereof regarding choice of law.

140. ***Counterparts***. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required.

141. ***Jurisdiction***. The Court shall retain jurisdiction over the implementation,

enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

142.    *Notices*. All notices provided for herein, shall be sent by email with a hard copy sent by first class mail to:

If to Plaintiffs or Class Counsel:

> John Heenan
> **Heenan & Cook, PLLC**
> 1631 Zimmerman Trail
> Billings, MT 59102
> Tel. 406.839.9091
> john@lawmontana.com

> Jason S. Rathod
> **Migliaccio & Rathod LLP**
> 412 H St NE, Suite 302
> Washington DC 20002
> Tel. 202.470.3520
> jrathod@classlawdc.com

> J. Devlan Geddes
> **Goetz, Geddes & Gardner P.C.**
> 35 N. Grand Ave.
> Bozeman, MT 59715
> Tel. 406.587.0618
> devlan@goetzlawfirm.com

Raph Graybill
**Graybill Law Firm, PC**
300 4th Street North
Great Falls, MT 59401
Tel. 406.452.8566

If to Defendant or Defendant's Counsel:

Neil Gilman
P. Reiko Koyama
**Hunton Andrews Kurth LLP**
2200 Pennsylvania Ave., N.W
Washington, D.C. 20037
Tel. 202.955.1500
ngilman@hunton.com
pkoyama@hunton.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

143. ***Modification and Amendment***. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

144. ***No Waiver***. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

145. ***Authority***. Class Counsel (for Plaintiffs and the Settlement Class), and Defendant's Counsel (for Defendant), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and Defendant to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement

to all of the terms and provisions of this Agreement.

146. ***Agreement Mutually Prepared***. Neither Plaintiffs nor Defendant shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

147. ***Independent Investigation and Decision to Settle***. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

148. ***Receipt of Advice of Counsel***. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement

and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

149.    ***Exhibits***. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

150.    ***Representations/Warranties Regarding Other Potential Plaintiffs or Legal Claims***. Class Counsel represent and warrant that they do not represent any clients, or have knowledge of any potential clients, with claims or potential claims against the Released Parties aside from the Released Claims. Plaintiffs and Class Counsel each represent and warrant that neither of them is aware of any potential plaintiff, or any attorney other than Class Counsel, who intends to make demands or bring litigation against the Released Parties. Plaintiffs and Class Counsel each further represent and warrant that neither of them has been notified or otherwise informed of any such intention or consideration thereof. Plaintiffs and Class Counsel each further represent and warrant that neither of them has been referred to any other attorney or any other individual alleging to have, asserting, pursuing, or seeking to pursue any claims against the Released Parties. Class Counsel represent and warrant that they have removed all advertisements, including social media posts, soliciting potential clients to pursue claims against Defendant or any of the Released Parties. Class Counsel further represent and warrant that they have removed any other publications, including social media posts, announcing, publicizing, or describing the Released Claims, to the extent published by Class Counsel.

151.    ***Bar to Future Suits***. Upon entry of the Final Approval Order, the Releasing Parties shall be enjoined from prosecuting any Released Claim in any proceeding against the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order. It is further agreed that the Settlement may be

pleaded as a complete defense to any proceeding subject to this paragraph.


*Signature Pages to follow*

**CLASS COUNSEL (on behalf of the Plaintiffs and the Settlement Class)**

John Heenan (Apr 29, 2025 14:59 MDT)

**JOHN HEENAN**
HEENAN & COOK, PLLC

*Raphael Graybill*

**RAPH GRAYBILL**
GRAYBILL LAW FIRM, PC

Jason Rathod (Apr 30, 2025 16:53 EDT)

**JASON RATHOD**
MIGLIACCIO & RATHOD LLP

*J. Devlan Geddes*

**DEVLAN GEDDES**
GOETZ, GEDDES & GARDNER P.C.

**THE NEIMAN MARCUS GROUP LLC**

By: Andrew Woodworth
Its Chief Legal Officer

**THE NEIMAN MARCUS GROUP LLC'S COUNSEL**

**P. REIKO KOYAMA**
HUNTON ANDREWS KURTH LLP

# EXHIBIT 1
# (EMAIL NOTICE)

FROM: EMAIL ADDRESS

TO: EMAIL ADDRESS

RE: NEIMAN MARCUS COURT ORDERED NOTICE OF CLASS ACTION SETTLEMENT

<<Unique ID>>

United States District Court for the District of Montana

*In re: Snowflake, Inc. Data Security Breach Litigation (The Neiman Marcus Group LLC)*

# If your Personal Information was impacted in the Data Incident involving The Neiman Marcus Group LLC, in May of 2024, you may be entitled to benefits from a settlement.

*A Court authorized this Notice. This is __not__ a solicitation from a lawyer.*

**You can file your Claim Form here.**

A $3,500,000 Settlement has been reached in a class action lawsuit against The Neiman Marcus Group LLC ("Defendant") arising out of a data security incident that Defendant detected in May of 2024 ("Data Incident"). The Defendant discovered unauthorized access to its computer network resulting in potential access to Personal Information of Settlement Class members. Personal Information means some combination of Settlement Class members' names, email addresses, dates of birth, gift card information, partial credit card numbers, and the last four digits of Social Security numbers stored within Defendant's vendor's information technology systems at the time of the Data Incident.

The purpose of this Notice is to inform you of the class action and the Settlement so you may decide whether to file a Claim Form, opt-out, object, or do nothing.

**Who's Included? Records show you are a Settlement Class Member,** defined as: All persons who live in the United States whose Personal Information was potentially compromised as a result of the Data Incident.

**What Does the Settlement Provide?** As a Settlement Class Member, the following Settlement Class Member Benefits are provided as a result of the Settlement. You can submit a Claim Form online or by mail postmarked by **Month XX, 20YY**:

> **Documented Losses Cash Payment:** You may submit a Claim Form and provide documentation showing that you incurred losses related to the Data Incident for up to $2,500.00 per Settlement Class Member; **AND/OR**

> **Credit Monitoring:** In addition to a Documented Losses Cash Payment, you may also submit a Claim Form to receive two years of free Credit Monitoring.

You must submit your Claim Form here or by mail postmarked by **MONTH DD, 20YY**.

**Other Options.** If you do not want to be legally bound by the Settlement, you must opt-out of the Settlement by submitting a personally signed by hand request to opt out by mail that must be postmarked by **Month XX, 2025**. If you do not opt-out, you will give up the right to sue and will release the Defendant and Released Parties with respect to the legal claims in this lawsuit. If you

do not opt out, you may object to the Settlement by **Month XX, 2025**. The Long Form Notice on the Settlement Website explains how to opt-out or object. If you do nothing, you will get no Settlement Class Member Benefits, and you will be bound by the Settlement and any judgments and orders. The Court will hold a Final Approval Hearing on **Month XX, 2025**, to consider any objections and whether to approve the Settlement, Class Counsel's attorneys' fees of up to one-third of the Settlement Fund and costs. You or your lawyer may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, and if so, instructions will be at www.XXXXX.com.

**This notice is a summary. Learn more about the Settlement** here, or by calling toll free 1-XXX-XXX-XXX.

# EXHIBIT 2
# (LONG FORM NOTICE)

# If your Personal Information was impacted in the Data Incident involving The Neiman Marcus Group LLC in May of 2024, you may be entitled to benefits from a settlement.

*A court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- This notice concerns a case called *In re: Snowflake, Inc., Data Security Breach Litigation* No. 2:24-MD-3126-BMM, filed in the United States District Court for the District of Montana.

- A $3,500,000 settlement has been reached in a class action lawsuit against The Neiman Marcus Group LLC ("Defendant") arising out of a data breach incident that Defendant detected in May of 2024, in which an unauthorized third party may have gained access to certain files containing Personal Information belonging to Defendant's customers and employees ("Data Incident"). Personal Information means some combination of Settlement Class members' names, email addresses, dates of birth, gift card information, partial credit card numbers, and the last four digits of Social Security numbers stored within Defendant's vendor's information technology systems at the time of the Data Incident.

- The Settlement Class includes all persons living in the United States whose Personal Information was potentially compromised as a result of the Data Incident.

- To be eligible to make a claim, you must be a member of the Settlement Class.

- If you are a Settlement Class Member, you can file a Claim Form for the following Settlement Class Member Benefits:

  **Documented Loss Cash Payment**: You may submit a Claim Form and provide reasonable documentation showing that you incurred losses related to the Data Incident for up to $2,500.00 per Settlement Class Member.

  **and/or**

  **Credit Monitoring**: In addition to a Cash Payment, you may also submit a Claim Form to receive two years of free Credit Monitoring (valued at $108 per year).

  Your Documented Loss Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) adjustment depending upon the total value of the Valid Claims submitted.

**This Notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get Settlement Class Member Benefits is to submit a timely and valid Claim Form. | Submitted or Postmarked by:<br>**MONTH DD, 20YY** |
| **EXCLUDE YOURSELF OR OPT-OUT OF THE SETTLEMENT** | Get no Settlement Class Member Benefits. Keep your right to file your own lawsuit against the Released Parties about the legal Released Claims that are released by the Settlement in this lawsuit. | Postmarked by:<br>**MONTH DD, 20YY** |
| **OBJECT TO THE SETTLEMENT** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | Filed or Postmarked by:<br>**MONTH DD, 20YY** |
| **DO NOTHING** | Get no Settlement Benefits. Give up your legal rights. | |

**Questions? Go to www.XXXXXXXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court must decide whether to approve the Settlement and the requested attorneys' fees, costs, and Service Awards. No Settlement Class Member Benefits will be provided unless the Court approves the Settlement.

## BASIC INFORMATION

### 1.  Why is this Notice being provided?

A court authorized this Notice because you have the right to know about the Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant Final Approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Brian Morris of the United States District Court for the District of Montana is overseeing this class action. The lawsuit is known as *In Re: Snowflake, Inc., Data Security Breach Litigation*, No. 2:24-MD-3126-BMM ("lawsuit"). The individuals who filed this lawsuit are called the "Plaintiffs" and/or "Class Representatives" and the company sued, The Neiman Marcus Group LLC is called the "Defendant."

### 2.  What is this lawsuit about?

Plaintiffs filed this lawsuit against Defendant, individually, and on behalf of Settlement Class members regarding possible unauthorized access to Settlement Class members' Personal Information involved in the Data Incident. The Personal Information involved in the Data Incident includes names, dates of birth, gift card information, partial credit card numbers, and the last four digits of Social Security numbers stored within Defendant's vendor's information technology systems that may have been affected in the Data Incident.

Plaintiffs allege that Defendant, in May of 2024, identified that Personal Information of Settlement Class members may have been compromised, accessed, and exfiltrated ("Data Incident"). Subsequently, Plaintiffs filed a Consolidated Class Action Complaint against Defendant, alleging causes of action for negligence, negligence per se, breach of contract, and declaratory judgment.

Defendant denies the legal claims and denies any wrongdoing or liability. The Court has not made any determination of any wrongdoing by Defendant, or that any law has been violated. Instead, Plaintiffs and Defendant have agreed to a settlement to avoid the risk, cost, and time of continuing the lawsuit.

### 3.  Why is the lawsuit a class action?

In a class action, one or more people (called class representatives) sue on behalf of all people who have similar legal claims. Together, all these people are called a class or class members. One court resolves the issues for all class members, except for those class members who timely exclude themselves (opt-out) from the class.

### 4.  Why is there a Settlement?

Plaintiffs and Defendant do not agree about the legal claims made in this lawsuit. The lawsuit has not gone to trial, and the Court has not decided in favor of Plaintiffs or Defendant. Instead, Plaintiffs and Defendant have agreed to settle the lawsuit. The Class Representatives, Defendant, and their lawyers

believe the Settlement is best for Settlement Class members because of the Settlement Class member Benefits available and the risks and uncertainty associated with continuing the lawsuit.

## WHO IS INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am part of the Settlement?

The Settlement Class includes all persons who live in the United States whose Personal Information was potentially compromised as a result of the Data Incident. You may have been sent notice regarding the Data Incident.

### 6. Are there exceptions to being included in the Settlement?

Yes. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff; and (d) any individual who timely and validly opts-out of the Settlement.

### 7. What if I am still not sure whether I am part of the Settlement?

If you are still not sure whether you are a Settlement Class Member, you may go to the Settlement Website at www.XXXXXXXXXXXXXX.com or call the Settlement Administrator's toll-free number at 1-XXX-XXX-XXXX.

## THE SETTLEMENT BENEFITS

### 8. What does the Settlement provide?

If you are a Settlement Class Member and you submit a timely and valid Claim Form, you may be eligible to receive the following Settlement Benefits:

**Documented Loss Cash Payment**: You may submit a Claim Form and provide reasonable documentation showing that you spent money or incurred losses related to the Data Incident for up to $2,500.00 per Settlement Class Member.

Examples of expenses incurred as a result of the Data Incident, include (without limitation) bank fees, long distance phone charges, cell phone charges (only charged by the minute), data charges (only if charged based on the amount of data used), postage, gasoline for local travel and fees for credit reports, credit monitoring, or other identity theft insurance products purchased between May 1, 2024, and the date of the Claim Form Deadline.

Examples of reasonable documentation include (but are not limited to): telephone records, correspondence including emails, or receipts. Personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute reasonable documentation but may be included to provide clarification, context, or support for other submitted reasonable documentation. You will not be reimbursed for expenses if you have been reimbursed for the same expenses by another source.

If you do not submit reasonable documentation supporting a loss, or if your Claim Form is invalid as determined by the Settlement Administrator, and you do not cure your Claim Form, your Claim Form will be denied and you will not receive a Settlement Class Member Benefit.

**Credit Monitoring:** In addition to a Cash Payment, you may also submit a Claim Form to receive two years of free Credit Monitoring (valued at $108.00 per year).

Your Documented Loss Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) adjustment increase from the Settlement Fund if the amount of timely and valid Claim Forms does not use the entire Settlement Fund. Alternatively, if the amount of timely and valid Claim Forms exceeds the amount of the Settlement Fund, your Documented Loss Cash Payment may be subject to a *pro rata* decrease.

### 9. What am I giving up to receive Settlement Class Member Benefits or stay in the Settlement Class?

Unless you exclude yourself (opt-out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders and any judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Released Parties about the legal issues in this lawsuit that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

### 10. What are the Released Claims?

Section XIII of the Settlement Agreement describes the Released Claims and the Release, in necessary legal terminology, so please read these sections carefully. The Settlement Agreement is available at www.XXXXXXXXXX.com. For questions regarding the Release or Released Claims and what the language in the Settlement Agreement means, you can also contact Class Counsel listed in Question 19 for free, or you can talk to your own lawyer at your own expense.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

### 11. How do I make a claim for Settlement benefits?

You must submit a timely and valid Claim Form for the Settlement Class Member Benefits described above. Your Claim Form must be submitted online at www.XXXXXXXXX.com by **MONTH DD, 20YY**, or mailed to the Settlement Administrator at the address on the Claim Form, **postmarked** by **MONTH DD, 20YY**. Claim Forms are also available on the Settlement Website at www.XXXXXXXXXXXXX.com or by calling 1-XXX-XXX-XXXX or by writing to:

*Neiman Marcus Data Breach Litigation*
Settlement Administrator
PO Box XXXX

### 12. What happens if my contact information changes after I submit a Claim Form?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by writing to:

*Neiman Marcus Data Breach Litigation*
Settlement Administrator
PO Box XXXX

### 13. When will I receive my Settlement benefits?

If you submit a timely and valid Claim Form, Settlement Class Member Benefits will be provided after the Settlement is approved by the Court and becomes final. It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXXXXXXX.com for updates.

# THE LAWYERS REPRESENTING YOU

## 14. Do I have a lawyer in this lawsuit?

Yes, the Court has appointed the attorneys listed in question 19 below as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this lawsuit.

## 15. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees of up to one-third of the $3,500,000 Settlement Fund, plus reimbursement of costs. Class Counsel will also ask the Court to approve a Service Award for the Class Representatives of up to $3,000 each for their efforts in achieving the Settlement. If awarded by the Court, the attorneys' fees and costs, and the Service Awards will be paid from the Settlement Fund. The Court may award less than these amounts.

Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards will be made available on the Settlement Website at www.XXXXXXXXXXXXXX.com after it is filed with the Court.

# EXCLUDE YOURSELF OR OPT-OUT OF THE SETTLEMENT

If you are a Settlement Class member and want to keep any right you may have to individually sue or continue to sue the Released Parties on your own about the legal claims in this lawsuit or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting-out" of—the Settlement.

## 16. How do I opt out of the Settlement?

To exclude yourself from the Settlement, you must mail a written request for exclusion, which includes the following:

1) Your full name, mailing address, telephone number, claim identification number, email address, and account number (if applicable);
2) Your original ("wet") handwritten personal signature; and
3) A statement that you want to be excluded from the Settlement Class, such as "I request to be excluded from the proposed Settlement Class in *Snowflake, Inc., Data Security Breach Litigation (Neiman Marcus)*, No. 2:24-MD-3126-BMM.

The exclusion request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **MONTH DD, 20YY**:

*Neiman Marcus Data Security Breach Litigation*
Settlement Administrator
PO Box XXXX

———————————————

**Questions? Go to www.XXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

**You cannot opt-out (exclude yourself) by telephone or by email.**

"Mass" or "class" requests for exclusion filed by third parties on behalf of a "mass" or "class" of Settlement Class Members or multiple Settlement Class Members are not permitted. Settlement Class Members may only opt out on behalf of themselves.

## 17. If I opt out can I still get anything from the Settlement?

No. If you timely opt-out, you will not be entitled to receive Settlement Class Member Benefits, but you will not be bound by the Settlement or any judgment in this lawsuit. You can only get Settlement benefits if you stay in the Settlement and submit a timely and valid Claim Form.

## 18. If I do not opt-out, can I sue Defendant for the same thing later?

No. Unless you opt-out, you give up any right to sue any of the Released Parties for the legal claims this Settlement resolves and Releases relating to the Data Incident, and you will be bound by all the terms of the Settlement and by all proceedings, orders, and judgments in the lawsuit. You must opt-out of this lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

# OBJECTING TO THE SETTLEMENT

## 19. How do I tell the Court that I object to the Settlement?

If you are a Settlement Class Member, you can tell the Court you object to all or any part of the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards.

To object, you must file your objection with the Court by **MONTH DD, 20YY**, <u>and</u> send your objection by U.S. mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**, stating that you object to the Settlement in *Snowflake, Inc., Data Security Breach Litigation (Neiman Marcus)*, No. 2:24-MD-3126-BMM.

To file an objection, you cannot exclude yourself from the Settlement Class. Your objection must include all of the following information:

1) Your full name, mailing address, telephone number, email address, and claim identification number;
2) All grounds for the objection, accompanied by any legal support for the objection known to you as the objector or your own lawyer;
3) The number of times you have objected to a class action settlement within the 5 years preceding the date that you file the objection, the caption of each case in which you have made an objection, and a copy of any orders related to or ruling upon your prior objections that were issued by the trial and appellate courts in each listed case;
4) The identity of any lawyers representing you in connection with the objection, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, or Service Awards;
5) The number of times in which your lawyer or your lawyer's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which your lawyer or the firm has made the objection and a copy of any orders related to or ruling upon your lawyer's or the lawyer's law firm's prior objections that were issued by the

**Questions? Go to www.XXXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

**6**

trial and appellate courts in each listed case in which your lawyer's counsel and/or lawyer's law firm have objected to a class action settlement within the preceding 5 years;

6) Any and all agreements that relate to the objection or the process of objecting, whether written or oral, between you or your lawyer and any other person or entity;

7) A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

8) A statement confirming whether you and/or your lawyer(s) intend to personally appear and/or testify at the Final Approval Hearing; and

9) Your original ("wet") handwritten personal signature as the objector (a lawyer's signature is not sufficient).

To object, you must file timely written notice with the Court as provided below no later than **MONTH DD, 20YY**, and send by U.S. mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator postmarked by or shipped by private courier (such as Federal Express) by **MONTH DD, 20YY**, at the following addresses:

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL | SETTLEMENT ADMINISTRATOR |
|---|---|---|---|
| U.S. District Clerk District of Montana 400 N. Main Street Suite 273 Butte, Montana 59701 | John Heenan Heenan & Cook, PLLC 1631 Zimmerman Trail Billings, MT 59102 Tel. 406.839.9091 john@lawmontana.com<br><br>Jason S. Rathod Migliaccio & Rathod LLP 412 H St NE, Suite 302 Washington DC 20002 Tel. 202.470.3520 jrathod@classlawdc.com<br><br>J. Devlan Geddes Goetz, Geddes & Gardner P.C. 35 N. Grand Ave. Bozeman, MT 59715 Tel. 406.587.0618 devlan@goetzlawfirm.com<br><br>Raph Graybill Graybill Law Firm, PC 300 4th Street North Great Falls, MT 59401 Tel. 406.452.8566 | Neil Gilman P. Reiko Koyama Hunton Andrews Kurth LLP 2200 Pennsylvania Ave., N.W Washington, D.C. 20037 ngilman@hunton.com pkoyama@hunton.com | |

If you do not comply with the requirements for objecting as detailed above, you will waive and forfeit any and all rights you may have to appear separately and/or to object to the Settlement and you will be bound by all the terms of the Settlement and by all proceedings, orders, and judgments in the lawsuit.

**Questions? Go to www.XXXXXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

## 20. What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Opting-out is telling the Court that you do not want to be part of the Settlement Class. If you opt-out, you cannot object because you are no longer part of the Settlement.

# THE FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" to decide whether to approve the Settlement. You may attend and you may ask to speak if you submit an objection by the deadline, but you do not have to.

## 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **MONTH DD, 20YY, at X:XX a.m./p.m.** before the Honorable Brian Morris of the United States District Court for the District of Montana, 400 N. Main Street, Butte, Montana 59701. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement and Class Counsel's Application for Attorneys' Fees, Costs, and Service Awards.

If there are objections that were filed by the deadline, the Court will consider them. If you file a timely objection, and you would like to speak at the hearing, the Court will also listen to you or your lawyer speak at the hearing, if you so request.

**Note:** The date and time of the Final Approval Hearing are subject to change without further notice to the Settlement Class. The Court may also decide to hold the hearing via video conference or by telephone. You should check the Settlement Website www.XXXXXXXXXXXXXXXX.com to confirm the date and time of the Final Approval Hearing has not changed.

## 22. Do I have to attend to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you file an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you file a written objection by the deadline, the Court will consider it.

## 23. May I speak at the Final Approval Hearing?

Yes, as long as you do not exclude yourself (opt-out) and you submit a timely written objection requesting to speak at the hearing, you can (but do not have to) participate and speak for yourself at the Final Approval Hearing. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 19 above—and specifically include a statement whether you and your counsel will appear at the Final Approval Hearing.

# IF YOU DO NOTHING

## 24. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will not receive Settlement Class Member Benefits, and you will give up rights to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any of the Released Parties about the legal issues in this lawsuit that are released by the Settlement relating to the Data Incident.

# GETTING MORE INFORMATION

## 25. How do I get more information?

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXXXX.com. You may get additional information at www.XXXXXXXXXXXX.com, by calling toll-free 1-XXX-XXX-XXXX, or by writing to:

*Neiman Marcus Data Breach Litigation*
Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S
CLERK OFFICE REGARDING THIS NOTICE.**

# EXHIBIT 3
# (PUBLICATION NOTICE)

## *Neiman Marcus Data Breach*
## Banner Advertisement

**Display Banner (300x250)**

Frame 1 (on screen for 8 seconds)



Frame 2 (on screen for 5 seconds)



# EXHIBIT 4
# (CLAIM FORM)

**Must be postmarked or submitted online NO LATER THAN Month XX, 2025**

Neiman Marcus Data Breach Litigation
Settlement Administrator
PO BOX XXXX
_____
www.XXXXXXX.com

## 1.   Settlement Payment Claim Form

There has been a class action settlement in this lawsuit captioned *In re: Snowflake, Inc. Data Breach Litigation*; Case No. 2:24-CV-3126-BMM (U.S. District Court, District of Montana). Neiman Marcus Group LLC is one of several Defendants in the lawsuit. The Settlement Class includes all persons who live in the United States whose Personal Information was potentially compromised as a result of a data security incident that occurred in May of 2024, in which unauthorized third parties purportedly gained access to Settlement Class members' Personal Information from Neiman Marcus's computer systems ("Data Incident").

This Claim Form should be filled out online or submitted by mail if you received a notification that your Personal Information may have been impacted in the Data Incident involving Neiman Marcus Group LLC and want to receive Settlement Class Member Benefits. The Settlement Class Member Benefits include:

**Documented Loss Cash Payment**: You may submit this Claim Form and provide reasonable documentation showing that you incurred losses related to the Data Incident for up to $2,500.00 per Settlement Class Member; **AND/OR**

**Credit Monitoring**: In addition to a Documented Loss Cash Payment, you may also submit this Claim Form to receive two years of free Credit Monitoring.

Your Documented Loss Cash Payment may be subject to a *pro rata* (a legal term meaning equal share) increase or decrease depending upon the total value of all Valid Claims.

For more information, visit wwww.XXXXX.com and read either the Settlement Agreement or the Long Form Notice.

If you wish to submit a claim for a Documented Loss Cash Payment and/or Credit Monitoring, you must provide the information requested below. Please print clearly in blue or black ink. The **DEADLINE** to submit this Claim Form online (or have it postmarked for mailing) is **Month XX, 20YY.**

First Name                                              MI      Last Name

Mailing Address

City                                                    State    ZIP Code

Phone Number

Email Address

Claim Identification Number (located on the notice mailed or emailed to you)

## 2. Payment Eligibility Information

When submitting a Claim Form, you may elect to receive a Documented Loss Cash Payment and/or Credit Monitoring. Please provide as much information as you can to help us determine if you are entitled to a Documented Loss Cash Payment.

Questions? Go to www.XXXXXXX.com or call 1-888-000-0000

3

For a Documented Loss Cash Payment, please be sure to fill in the total amount you are claiming for each category and to attach documentation of the charges as described in italics. If you are asked to provide account statements as part of proof required for any part of your claim, you may mark out any unrelated transactions if you wish.

If a Settlement Class Member does not submit reasonable documentation supporting documented losses, or if their Claim is rejected by the Settlement Administrator for any reason, the Settlement Class Member will not receive a Documented Loss Cash Payment.

## Documented Loss Cash Payment

Please review the Long Form Notice or paragraph 75 of the Settlement Agreement (available at www.xxxxx.com) for more information on who is eligible to receive payment for documented losses and the nature of the expenses and losses that can be claimed.

PLEASE PROVIDE THE INFORMATION LISTED BELOW:

Check the box for each category of documented losses that you incurred as a result of the May 2024 Data Incident. Please be sure to fill in the total amount you are claiming for each category and to attach documentation of the charges as described in bold type (if you are asked to provide account statements as part of proof required for any part of your claim, you may mark out any unrelated transactions if you wish).

**Documented Losses Resulting from the Data Incident: (not to exceed $2,500 per Settlement Class Member):**

| Expense Types and Examples of Documents (not to exceed $2,500 per Settlement Class Member) | Amount of Expense and Date | Description of Expense or Money Spent and Supporting Documents (Identify what you are attaching and why it's related to the Data Incident) |
|---|---|---|
| | $ [ ][ ][ ][ ] . [ ][ ] <br> [ ][ ] – [ ][ ] – [ ][ ][ ][ ] <br> MM    DD    YYYY | _____ <br> _____ <br> _____ <br> _____ |
| Other Incidental Telephone, Internet, Postage, or Gasoline (For Local Travel Only) Expenses <br> *Examples: Long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used)* | $ [ ][ ][ ][ ] . [ ][ ] <br> [ ][ ] – [ ][ ] – [ ][ ][ ][ ] <br> MM    DD    YYYY | _____ <br> _____ <br> _____ <br> _____ |
| Other Documented Expenses That Were Incurred as a Result of the Data Incident | $ [ ][ ][ ][ ] . [ ][ ] <br> [ ][ ] – [ ][ ] – [ ][ ][ ][ ] <br> MM    DD    YYYY | _____ <br> _____ <br> _____ <br> _____ |

Questions? Go to www.XXXXXXX.com or call 1-888-000-0000

3

| Credit Reports, Identity Theft Insurance, or Credit Monitoring Charges  *Examples: The cost of a credit report, identity theft insurance, or credit monitoring services that you purchased on or around January 30, 2023.* | $ ⬚⬚⬚⬚⬚ • ⬚⬚    ⬚⬚ – ⬚⬚ – ⬚⬚⬚⬚  MM    DD    YYYY | |

You may mark out any transactions that were not fraudulent and any other information that is not relevant to your claim before sending in the documentation.

## Credit Monitoring

***In addition*** to a Documented Loss Cash Payment, you may elect to receive two years of free Credit Monitoring.

☐ By checking this box, I affirm I want to receive free Credit Monitoring services.

If you select Credit Monitoring, you will need to follow instructions and use an activation code that you receive after the Settlement is final. The Credit Monitoring will not begin until you use your activation code to enroll. Activation instructions will be provided to your email address.

## Medicare Beneficiary Statement

☐ I declare that I was a Medicare beneficiary during the time period of May 24, 2024 through the date of submission of this Claim Form and I am seeking benefits in this Settlement related to emotional distress.

If you were a Medicare beneficiary at any time during the period of May 24, 2024 to present and are seeking any reimbursement for emotional distress, please contact the Settlement Administrator at [phone number] to provide additional information necessary for Medicare reporting requirements.

*Leave this box unchecked if either*: (i) you were not a Medicare beneficiary during the time period of May 24, 2024 to the present; or (ii) if you were a Medicare beneficiary at any time during the period from May 24, 2024 through the date of submission of this Claim Form and are not seeking any reimbursement for emotional distress from this settlement.

## Sign and Date Claim Form

I declare under penalty of perjury and the laws of the United States that the information supplied in this Claim Form by the undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

I understand that I may be asked to provide supplemental information by the Settlement Administrator before my claim will be considered complete and valid.

Date: ⬚⬚ – ⬚⬚ – ⬚⬚⬚⬚
      MM   DD   YYYY

_____
Signature

_____
Print Name

**MAIL YOUR CLAIM FORM.**

This

Clai

**Questions? Go to www.XXXXXX.com or call 1-888-000-0000**

3

m    Form    and    all    supporting    documentation    must    be    either          submitted    online    at
www.xxxxxx.com or postmarked by **Month XX, 2025**, and mailed to:

Neiman Marcus Data Breach Litigation
Settlement Administrator
P.O. BOX XXXX
<mark>Portland, OR 972XX-XXXX</mark>

**Questions? Go to www.XXXXXX.com or call 1-888-000-0000**

3