# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION | Cause No. 2:24-md-03126-BMM <br><br> **ORDER ON MOTION TO COMPEL ARBITRATION** |

## INTRODUCTION

Defendants LendingTree, LLC and QuoteWizard.com, LLC, a subsidiary of LendingTree, LLC (collectively "LendingTree") filed a Motion to Compel Arbitration. (Doc. 424.) Plaintiffs oppose the motion. (Doc. 549.) The Court denies the motion for the following reasons.

## BACKGROUND

The Court fully addressed the facts related to the multidistrict litigation in its order on Snowflake Inc.'s and Ticketmaster LLC's Motion to Dismiss Consumer Plaintiffs' claims. (Doc. 591.) The Court will address only the facts pertinent to the Motion to Compel Arbitration.

Linda Pierce, Aaron Macom, Nathan Thomas, and Antoun Nader (collectively, "LendingTree Plaintiffs") filed a class action complaint against

1

LendingTree. (Doc. 485.) The Fourth Amended Complaint ("FAC") contains the following causes of action against LendingTree: negligence, violations of the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.020, et seq., and unjust enrichment. (Doc. 485 ¶¶ 683–720.) LendingTree Plaintiffs allege that threat actors stole certain personal information in the Data Breach that LendingTree Plaintiffs had provided to LendingTree. (Doc. 485 ¶¶ 2, 625–26, 667.) LendingTree had stored this personal information on Snowflake's cloud.

LendingTree operates online marketplaces where consumers can compare quotes from lenders and insurance providers on various loans, credit cards, and insurance products. (*Id*. ¶¶ 613–15.) LendingTree Plaintiffs allege that they used LendingTree's services to obtain quotes for loans and insurance rates. (*Id*. ¶¶ 95, 99, 103, 107–08.) LendingTree requires consumers to create an account on its websites before using the products and services available. (Doc. 425 at 12–13.) LendingTree Plaintiffs created accounts to access LendingTree services by entering their personal information into the website registration forms. (Doc. 549 at 2.)

LendingTree contends that its registration form for services includes terms of use. (Doc. 425 at 12–13.) LendingTree Plaintiffs allege that they had no notice of the terms of use. (Doc. 549 at 3.) The terms of use contain an arbitration clause. (Doc. 425-1 at 51–52.) The arbitration clause includes a delegation clause that requires an arbitrator to resolve "any dispute or disagreement regarding the

2

enforceability, applicability or interpretation of any provision of this Agreement, including the provisions regarding dispute resolution and arbitration." (Doc. 425-1 at 52.) The arbitration clause further includes language waiving any right to a class action suit. (*Id*.) The clause requires all claims to be arbitrated individually. (*Id*.)

LendingTree filed a Motion to Compel Arbitration on May 16, 2025. (Doc. 424.) The Court granted leave to LendingTree Plaintiffs to serve arbitration related discovery. (Doc. 465.) LendingTree served discovery responses on August 8, 2025. (Doc. 549 at 11.) LendingTree Plaintiffs filed a Response to the Motion to Compel Arbitration on September 12, 2025. (Doc. 549.) The Court conducted a hearing on the matter on October 6, 2025. (Doc. 569.) Ninth Circuit caselaw applies to the claims as LendingTree consented to the application of Ninth Circuit law at the hearing. (Doc. 576 at 184.)

## LEGAL STANDARD

Congress passed the Federal Arbitration Act ("FAA") to expedite the resolution of disputes through arbitration rather than litigation. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The FAA governs when citizens of different states enter an arbitration agreement and the claims involve interstate commerce. *Theis v. AFLAC Inc.*, 2020 WL 9172984 (D. Mont. 2020); 9 U.S.C. § 2 (the FAA applies to all contracts "evidencing a transaction involving commerce."). "[A] court may order arbitration of a particular dispute only

3

where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

## DISCUSSION

### I. Whether the Arbitration Agreement Proves Enforceable

LendingTree contends that the terms of use delegates authority to an arbitrator to determine the scope of any disputes arising from its services, including the threshold issue of arbitrability. (Doc. 425 at 24–25.) The Court first must determine whether the parties formed a valid and binding arbitration agreement under Ninth Circuit law. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("[C]hallenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration."). "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

### A. Whether LendingTree Plaintiffs Agreed to Arbitration

LendingTree argues that LendingTree Plaintiffs entered a valid and binding agreement to arbitrate claims arising from the use of LendingTree's services. (Doc. 425 at 18.) LendingTree Plaintiffs deny having agreed to arbitrate and having received actual notice of LendingTree's terms of use. (Doc. 549 at 16.) A court may

4

enforce a "sign-in wrap" agreement if the party seeking to compel arbitration "provid[ed] reasonabl[e] conspicuous notice of the terms to which the consumer w[ould] be bound" and "the consumer . . . unambiguously manifest[ed] his or her assent to those terms." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154–55 (9th Cir. 2025). Courts equally consider "the visual design of the webpages and the context of the transaction" to assess whether a party provided "reasonably conspicuous" notice. *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025).

LendingTree contends that it provided conspicuous notice of the terms for the following five reasons: (1) the sign-in wrap agreements were viewable on its websites; (2) the terms of the agreements included an arbitration clause; (3) LendingTree Plaintiffs clicked a button stating that they "consent, acknowledge, and agree;" (4) the "notice of assent" appeared in nine-point Arial font with a blue hyperlink to the terms of use; and (4) LendingTree disallows services to consumers who fail to agree to its terms. (Doc. 425 at 21.)

Courts look to the following factors in evaluating the context of the transaction:

> (1) Whether the transaction contemplate[d] a continuing relationship by creating an account requiring a full registration process, (2) whether the user[] enter[ed] a free trial, (3) whether a user enter[ed] credit card

5

information, and (4) whether the user[] downloaded an app on their phone (suggesting consistent accessibility).

*Godun*, 135 F.4th at 710 (citations and quotations omitted).

The context of the transaction weighs against conspicuous notice in this case. *Godun*, 135 F.4th at 709. The "context of the transaction" demonstrates no "continuing, forward-looking relationship" between LendingTree and LendingTree Plaintiffs "that would be governed by terms and conditions." *Godun*, 135 F.4th at 710 (quoting *Keebaugh v. Warner Bros. Entertainment*, 100 F.4th 1005, 1017 (9th Cir. 2024)). "[W]hen a user simply purchases goods or avails herself of a one-term discount offer, there is less reason for her to expect a continued relationship beyond the purchase." *Chabolla*, 129 F.4th at 1155.

LendingTree Plaintiffs allege that they believed LendingTree's websites functioned as search engines that connected them with other companies who would provide actual loan and car insurance quotes. (Doc. 549 at 21–22.) LendingTree Plaintiffs further allege that their interpretation comports with LendingTree's marketing strategy. (*Id.*) These facts demonstrate "less reason" that the LendingTree Plaintiffs "expect[ed] a continued relationship" with LendingTree beyond the connection to other companies. *Chabolla*, 129 F.4th at 1155. LendingTree Plaintiffs also allege that they never entered credit card information or downloaded an app to

6

access LendingTree's services. (Doc. 549 at 21–22.) These facts further weigh against conspicuous notice. *Godun*, 135 F.4th at 710.

The visual design of the webpages also weighs against conspicuous notice. *Godun*, 135 F.4th at 709. Courts review the "font size, text placement, and overall screen design" of the webpage to determine whether a party provided conspicuous notice. *Chabolla*, 129 F.4th at 1155. Conspicuous notice requires the party seeking arbitration to have "prominently displayed" the terms "in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–57 (9th Cir. 2022). Terms "buried in fine print" prove insufficient to provide reasonable notice. *Id*. at 857.

The font size, text placement, and layout of the LendingTree websites and terms of use failed to provide conspicuous notice to LendingTree Plaintiffs. *Chabolla*, 129 F.4th at 1155. The notice text in the QuoteWizard form appears "in a tiny gray font" much smaller and lighter in color than the font size used in other parts of the registration form. *Berman*, 30 F.4th at 856. The notice text in the LendingTree form appears in the same white color as other text. The font size appears, however, "considerably smaller than the font used in the surrounding website elements." *Id*. LendingTree Plaintiffs allege that they accessed LendingTree's services through the

7

use of a smartphone. (Doc. 549 at 24.) Smartphone and tablet users likely would have difficulties reading the small gray and white font.

The notice text appears below the large green "Get My Auto Quotes" or "View My Rates" box requiring a consumer to have to scroll further down from the button to view the terms of use. (*See* Doc. 549-1 at 50; *see also* 560-1 at 24.) The form also appears cluttered with other offers. (*See* Doc. 549-1 at 50.) These features "naturally" detract the consumer's attention away from the terms of use. *Berman,* 30 F.4th at 857.

The terms of use appear in blue hyperlinks with each word capitalized. (*See* Doc. 549-1 at 50; *see also* 560-1 at 24.) The use of blue contrasts with the white background in the QuoteWizard form but does not contrast with the dark navy background in the LendingTree form. (*See id*.) The hyperlinks in the LendingTree form, at least, would appear difficult for a user to read on a smartphone. The QuoteWizard form also includes the following text in the same color of blue: "our marketing and re-marketing network, and up to eight insurance companies of their affiliates." (*See* Doc. 549-1 at 50.) The decision to use the same color for that sentence and the hyperlinks to the terms of use likely would fail to "alert a reasonably prudent user that a clickable link exists." *Berman*, 30 F.4th at 857. Taken all these

facts into account, LendingTree failed to provide conspicuous notice to LendingTree Plaintiffs of the terms of use. *Chabolla*, 129 F.4th at 1155.

LendingTree contends that LendingTree Plaintiffs assented to its terms of use when they clicked the "prominent, colored [sign-up] button" with the words "Get My [] Quotes" or "Continue." (Doc. 425 at 23.) "The second part of the test—whether the user takes some action that unambiguously manifests assent—is relatively straightforward." *Chabolla*, 129 F.4th at 1158 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023). A party seeking arbitration must have "explicitly advised" the consumer that the "[consumer]'s click of a button" would "constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857.

LendingTree failed to advise LendingTree Plaintiffs explicitly that a click of the "Get My Auto Quotes" or "View My Rates" button would "constitute assent to the terms and conditions of an agreement." *Id.* The forms stated: "I acknowledge that I have read, understand, and agree to this Website's Privacy Policy and Terms of Use." (*See* Doc. 549-1 at 50.) The form and the text on the buttons failed to "indicate to the user what action would" bind LendingTree Plaintiffs to the terms of use. *Berman*, 30 F.4th at 858. LendingTree's "fail[ure] to provide reasonably conspicuous notice of the terms of use" leads the Court to conclude that any click of the button by the LendingTree Plaintiffs on the LendingTree websites could not have

9

"unambiguously manifest[ed] [their] assent to those terms." *Chabolla*, 129 F.4th at 1158.

LendingTree fails to meet its burden in demonstrating that the parties formed a binding arbitration agreement. *Ashbey*, 785 F.3d at 1323. LendingTree failed to provide "reasonable conspicuous notice" to LendingTree Plaintiffs that the terms of use would bind them. *Chabolla*, 129 F.4th at 1154–55. LendingTree Plaintiffs could not have unambiguously assented to the terms of use. *Id*. The Arbitration Agreement proves unenforceable. 9 U.S.C. § 2.

## CONCLUSION

The Court denies LendingTree's Motion to Compel Arbitration. (Doc. 424.) LendingTree failed to provide reasonable conspicuous notice to LendingTree Plaintiffs of its terms of use mandating arbitration of any claims arising from the use of its platforms. *Chabolla*, 129 F.4th at 1154–55. LendingTree Plaintiffs could not have assented to the terms of use in light of this failure. *Id*. A stay of proceedings proves unwarranted. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). The Court will not address LendingTree's argument that the claims at issue encompass the scope of the arbitration clause as the parties never formed an agreement to arbitrate claims arising from the terms of use. (Doc. 425 at 28.)

LendingTree provided screenshots of LendingTree's current online userflow. (Doc. 560-1.) LendingTree alleges that the design and layout of the userflow has

remained unchanged since January 2017. (*Id*. at ¶¶ 7–14.) Consequently, the Court will not address LendingTree Plaintiffs' claim that LendingTree failed to show reasonably conspicuous notice as a matter of law. (Doc. 549 at 30.)

The Court will not address LendingTree Plaintiffs' argument related to the alleged unconscionability of LendingTree's terms of use as the Court determines that the arbitration agreement proves unenforceable under Ninth Circuit precedent. (*Id*. at 33.)

## ORDER

Accordingly, **IT IS ORDERED** that Defendant LendingTree's Motion to Compel Arbitration (Doc. 424) is **DENIED.**

Dated this 30th day of October, 2025.

_____
Brian Morris, Chief District Judge
United States District Court